117 Cal.App.2d 156 (1953)
In re LINDA RUTH MAXWELL, a Minor. NATHAN EDGAR CLICK et al., Respondents,
v.
NAOMI BRUNNING, Appellant.
Civ. No. 15406. 
California Court of Appeals. First Dist., Div. One. 
Apr. 3, 1953.
 Suren Toomajian, Stanley E. Sparrowe and Stark & Champlin for Appellant.
 Norris & Broun for Respondents.
 PETERS, P. J.
 The mother of Linda Maxwell appeals from a judgment entered in 1951 pursuant to section 701 of the Welfare and Institutions Code declaring that the child is free from the custody and control of her mother. In 1947, when Linda was 5 years old, she had been declared a ward of the juvenile court, and the mother deprived of her custody because of the mother's then excessive drinking. Since then the child has been placed in several foster homes. Since 1948 she has been in the home of the Clicks. In January of 1951 the Clicks filed the instant proceeding as the preparatory step to the adoption of Linda. The hearing on the petition was had in December of 1951. The basic contention of appellant is that the evidence is insufficient to support findings removing *158 the child from the custody and control of the mother under any of the subdivisions of section 701 of the Welfare and Institutions Code.
 At the hearing the following facts were developed: Linda was born, out of wedlock, in Arkansas on August 19, 1942. The father of the child has never contributed to her support. Early in 1943 appellant and Linda came to California where appellant worked at various jobs and finally took up her residence in Oakland Sometime in 1946 appellant quit work and lived thereafter on her unemployment insurance. During this time, and until 1950, appellant admitted that she was an alcoholic. In April of 1947 Linda was declared a ward of the juvenile court and committed to the custody of the probation officer for placement in a foster home
 For a short time Linda was placed in several local foster homes, and then was placed with appellant's sister who took the child to Oregon. In 1948 Linda was returned to the court by appellant's sister, she being unable to care for the child any longer. On September 2, 1948, the child was then placed with the Clicks as foster parents, where she has remained since. The Clicks, as foster parents, have received $50 per month from the county for the child's care. They have furnished the child with loving care and a fine home. The child's health and mental attitude have improved since residing with the Clicks, and she has made a good adjustment to her new environment. In January of 1951 the Clicks filed a petition to adopt Linda, after discovering the whereabouts of appellant, but appellant refused her consent. Whereupon, the present proceeding was instituted.
 From September of 1948 to January of 1951 appellant made no effort to see or to contact her daughter through any official agency. She testified that she called once (apparently in 1949) at the court and asked for a particular social worker. When told that the named employee was no longer there, no other inquiry was made. Appellant did (apparently in the summer of 1949) make some inquiry of a Mrs. Emro, a friend who had taken care of Linda for a short time before she was declared a ward of the court and who had made the initial complaint to the juvenile authorities. Mrs. Emro, who had no connection with the juvenile court or probation office, told appellant that the child was being well cared for and was out of town, but refused to give appellant the child's address. *159
 No other effort to locate or to communicate with Linda was made until February of 1951. Appellant testified that respondents' lawyer had located her in December of 1950 trying to secure her consent to the adoption, and that in February of 1951 she made inquiry of a social worker at the probation office. The social worker refused to give appellant the child's address on the ground that the present proceeding was then pending, and that the issues involved would have to be resolved by the judge. Appellant did discover the child's whereabouts shortly thereafter. Between then and December of 1951 (the date of the trial) she visited the child twice, and the Clicks brought the child to see her several times. Appellant sent the child a birthday gift in August of 1951, but at no time did she furnish any clothes for the child or offer to contribute to her support. The Clicks made no demand for any such contribution.
 The Clicks started to look for appellant in 1950. Their lawyer discovered her general whereabouts in December of 1950, but did not definitely locate her until January of 1951. At that time appellant was living in Oakland with her husband and new child.
 Appellant admitted that she continued to drink to excess after Linda was declared a ward of the court in April of 1947, until 1950. In December of 1949 she married Benjamin Brunning, a boilermaker who averages better than $400 a month income. She sought medical treatment for alcoholism in January of 1950, and from November of 1950 to the time of trial in December of 1951 had not had a drink. At the time of trial she was still taking medicine under doctor's orders to help her conquer the drinking habit. Her doctor is hopeful of a complete cure.
 The marriage of the Brunnings is happy and harmonious. The couple live in a comfortable rented house in Oakland that has a bedroom for Linda should she return to her mother. They have a child born to them in July of 1950. Mr. Brunning testified that he was willing to accept Linda into their home and to support her. Appellant testified that at no time did she intend to abandon Linda.
 [1] There was introduced into evidence the report and recommendation of the probation officer dated November 5, 1951. This report was introduced by appellant's own counsel so that if it contains any evidence otherwise objectionable, such objection was waived. It summarizes most of the facts *160 to which reference has been made. It states that Linda was declared to be a ward of the court in 1947 "when her mother's home was found to be unfit by reason of her drinking and associations with various men"; that from 1947 to January of 1951 "she never contacted the Probation Office regarding Linda's whereabouts although she knew that this office would tell her where the child was placed"; that she attributed this apparent lack of interest to the fact that "such a contact would cause her more heartache and it would therefore be more difficult for her to see Linda"; that while she sent Linda a birthday present in 1951, she did not send her a Christmas or other present or contact the probation office because she "did not feel like it." The probation officer recommends that if the court finds that appellant violated sections "a" or "b" of section 701 of the Welfare and Institutions Code that the child be declared free from the mother's custody and control.
 Something more should be said about the 1947 wardship proceedings The entire juvenile court file in that proceeding has been sent up to this court as an exhibit. It was never formally introduced into evidence. Counsel for respondents offered the file, and then the following occurred:
 "Mr. Toomajian [counsel for appellant]: They are records of the Court any way."
 "Mr Broun [counsel for respondents]: That is so, but I want to be sure they are in the record."
 "The Court: The Court has already reviewed the record."
 This file is not indispensable to the determination of the present appeal, inasmuch as it simply presents, in great detail, the case history disclosed by the testimony and probation report in the instant proceeding. [2] It is obvious that the parties and the court treated the 1947 file as being before the court, and that the court considered it. In view of the facts already discussed, and the fact that the probation office is an official part of the juvenile court, and the fact that its records are official records, the file, for what it is worth, will be considered as having been before the trial court.
 The petition initiating the wardship proceedings alleges that the then home of Linda "by reason of neglect and depravity on the part of the mother of said person is an unsatisfactory place for said person, to wit: That the parents of said person are living apart; that said person is in the care of the mother of said person; that your petitioner [a social worker in the probation office] is informed and believes *161 and therefore alleges that said mother repeatedly drinks intoxicating liquor to excess; that said mother repeatedly leaves said person alone in said home; that said mother is now confined in the Oakland City Jail." The reports, recommendations and investigations contained in the file disclose, in minute detail, the neglect of the mother that led to the institution of the 1947 proceedings.
 The commitment recites that the mother of Linda was served with a citation for the hearing, but did not appear, and that evidence was taken. The court finds that Linda "comes within the provisions of subdivision D of Section 700 of said Juvenile Court Law and that the home of said person is unfit and that the welfare of said person requires that the said person be hereby declared a ward of the Juvenile Court, and that said person be hereby committed to the care and custody of the Probation Officer for placement in a foster home." It was so ordered.
 On this record the trial court, in the instant case, after setting forth the jurisdictional facts, finds that in 1947 the mother "was deprived of the custody of said minor child because of the cruel treatment and neglect of the said child by said mother and of habitual intemperance"; that the child has been a ward of the court ever since; that Linda "is a person abandoned by said Naomi Brunning, who was formerly Naomi Maxwell the parent entitled to her sole custody; and that said parent left said child in the care and custody of another without any provision for support and without any communication from said parent for the period of more than one year with the intent of said parent to abandon said child."
 "That it is for the best interest of the said Linda Ruth Maxwell that she be declared free from the custody and control of the said Naomi Brunning."
 Based on these findings, the court concluded and adjudged that Linda should be and is free from the custody and control of her mother.
 It is the main contention of appellant that the evidence does not support the findings, nor the findings the judgment, under any of the subdivisions of section 701 of the Welfare and Institutions Code. All that need be considered is the first part of the section and subdivision "(a)" thereof. They read as follows: *162
 "The jurisdiction of the juvenile court extends also to any person who should be declared free from the custody and control of either or both of his parents. The words 'person who should be declared free from the custody and control of either or both of his parents' shall include any person under the age of 21 years who comes within any of the following descriptions:"
 "(a) Who has been left by either or both of his parents in the care and custody of another without any provision for his support, or without communication from either or both of his parents, for the period of one year with the intent on the part of such parent or parents to abandon such person. Such failure to provide, or such failure to communicate for the period of one year, shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him."
 When those naturally entitled to custody of a child fall within subdivision "(a)" of the section, or any of the other subdivisions, and the court declares the child free from the custody and control of such parents, then, under section 224 of the Civil Code, the consent of such parent or parents is no longer necessary to the adoption of such child.
 The appellant points out that under subdivision "(a)," before a child can be abandoned it must have been "left" in the care and custody of another, and contends that a child is not so "left" when, as here, the child is taken from the parent by judicial order. Based on this premise, appellant then urges that when a child is taken from a parent by judicial sanction, the parent's failure thereafter to support or care for the child is immaterial because there was no original abandonment within the meaning of subdivision "(a)."
 The first part of this argument is sound; the second is not.
 [3] The cases do, as contended by appellant, establish the rule to be that when a child is taken from a parent by a judicial wardship proceeding, such child has not been abandoned under subdivision "(a)" of section 701. This rule was first declared in Matter of Cozza, 163 Cal. 514 [126 P. 161, Ann.Cas. 1914A 214]. In that case a stepfather, by way of grudge, instituted proceedings against his stepchild to have her declared a ward of the court on the ground of her claimed disobedience. Such proceedings were successful and the child was judicially removed from the custody of the mother against her wishes, the court directing that such *163 custody be in another for one year. The Supreme Court carefully noted, however (p. 529), unlike the present case, that the mother began and continued efforts to have the child returned to her, and that during the child's entire absence the mother made unsuccessful efforts to see and converse with her. The mother misunderstood the one-year custody order and so postponed legal proceedings to regain the child's custody until the end of the year. At the end of the year the parties to whom custody had been awarded filed a petition to adopt the child on the ground that the child had been abandoned by her mother for one year. The Supreme Court held that an "abandonment" for such purposes must be a voluntary intentional act, and that no such abandonment occurs when the child is removed from the custody of the parent by judicial decree against the wishes of the parent. [4] The court first laid down the proper rule of construction in the following words (p. 524): "The power of the court in adoption proceedings to deprive a parent of his child being in derogation of his natural right to it, and being a special power conferred by the statute, such statute must be strictly construed, and in order to warrant the exercise of the special power and sustain an order for adoption made in opposition to the wishes and against the consent of the natural parent on the ground that conditions prescribed by statute exist which make that consent unnecessary, the existence of such conditions must be clearly proven, and the evidence bring them within the terms and intent of the statute. The law is solicitous toward maintaining the integrity of the natural relation of parent and child, and in adversary proceedings in adoption, where the absolute severance of that relation is sought, without the consent and against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation."
 The court then stated (p. 528): "To constitute abandonment there must be an intention to do so, express or implied, from the conduct of the parent respecting the child. This is the character of abandonment contemplated by the very terms of section 224 as far as they are applicable or are relied on in this proceeding. It contemplates a case where a child has been voluntarily surrendered or left for a year in the care and custody of another without any agreement or provision for its support. This is not the situation here. *164 The care and custody of this child was not so left by the mother with either Mrs. Merriman or the petitioners for adoption. It was taken away from her and placed in the custody of the former by order of the juvenile court (whether valid or not is immaterial to this inquiry) without the consent of the mother and against her wishes and desire."
 In re Cattalini, 72 Cal.App.2d 662 [165 P.2d 250], applied the same rule to a factual situation where a father, deprived of custody by a court order, continued to communicate with his children after the wardship decree, and whose failure to furnish support was held excused by an inability to pay, and by the unwillingness of the mother and stepfather to accept payment. Under such facts, the court stated that the judicial removal from custody is not the voluntary relinquishment of control contemplated by the statute. At page 665 the court stated:
 "We turn then to the first question to be resolved: Were the children 'left' by appellant in the custody and care of the mother within the meaning of said section, when they were placed in her custody by a court order? According to Webster's International Dictionary, 'leave' means 'to put, deposit, deliver, or the like, so as to allow to remain;--with a sense of withdrawing oneself from; as leave your hat in the hall; we left our cards.' Thus the term appears to connote voluntary action. Therefore, it may not be said that appellant left his children in the care and custody of the respondent when, by an order of the court, they were taken from the joint control of their parents and placed in the sole care and custody of the mother. ..."
 "Here, as in the Cozza case, the children were not voluntarily surrendered or left by appellant; they were taken away from him and placed in the custody of the mother by order of the court. There would appear to be no reason why this rule is not applicable to the facts disclosed herein."
 While these cases establish the rule to be that an involuntary removing from custody by a wardship order does not, under section 701, constitute an abandonment so as to start the one year running, they do not foreclose the possibility that by action or nonaction subsequent to the wardship proceeding the parent can be guilty of an abandonment. In both of the above cases the courts carefully rebutted any presumption of an abandonment by subsequent action by emphasizing that after the wardship proceedings the parents went to great lengths to see and to communicate with their children. *165 [5] Construing the section strictly, as should be done, it seems obvious that where, after a wardship proceeding, there is no attempt to support or to communicate with the child for a period of over three years, there has been an "abandonment" by such nonaction within the meaning of section 701, subdivision "(a)" of the Welfare and Institutions Code. Regardless of how the child has been taken from her parent, by such nonaction that has continued for at least a year, pursuant to the presumption contained in the subdivision in question, the parent may be deemed by the trial court to have abandoned the child. In such a case the child has been "left ... in the care and custody of another without any provision for his support, or without communication from ... his parents, for the period of one year" within the meaning of the section.
 There have been several cases discussing the essentials of an abandonment by a parent of a child. (See, generally, In re Creely, 70 Cal.App.2d 186 [160 P.2d 870]; In re Green, 192 Cal. 714 [221 P. 903]; Matter of Forrester, 162 Cal. 493 [123 P. 283]; Guardianship of Kerns, 74 Cal.App.2d 862 [169 P.2d 975].) None of these cases involved or discussed the precise problem here involved. The case closest in point is In re Peterson, 56 Cal.App.2d 791 [133 P.2d 831]. There a father, by consent, placed the child in the custody of strangers. There, as in the instant case, the original leaving of the child was not an abandonment of the child within the meaning of section 701(a). It was held, however, that a finding of abandonment resulting in a judgment freeing the child from the custody and control of the father was supported by evidence that the father had failed to communicate with the child for 13 months, and failed to make any effort to support the child. Thus, what was not initially an abandonment was converted into such by the latter conduct of the parent.
 In the instant case the facts are more aggravated than they were in the Peterson case. Here the wardship proceeding was in April of 1947. From then until the middle of 1948 the child was placed in foster homes, including the home of appellant's sister in Oregon. From the middle of 1948 to January of 1951 appellant made no effort to support the child, made no effort to communicate with her, and did not seem concerned about her whereabouts. The record shows that appellant knew that by an inquiry of the juvenile court she could have, at any time, ascertained the child's whereabouts. She went once to *166 the probation office and asked for a certain social worker, and when told that such person was no longer employed there, left without making further inquiry or stating her business. The inquiry made of Mrs. Emro was not sufficient. It was simply a request of a friend with no official connection with the court or probation office. The only explanation of this apparent lack of interest, given to the social worker in 1951, was that it would cause her heartache to see Linda, and because she did not "feel" like seeing her. On the trial she attempted to excuse her lack of interest by her alcoholism up to 1950, her financial inability to support the child, and her weakened health following the birth of her second child. The sufficiency of these explanations was for the trial court. It chose to find an abandonment and its finding is amply supported.
 The parties ably discussed the possibility of other subdivisions of section 701 being applicable. In view of the determination that subdivision "(a)" is applicable, it is not necessary to discuss whether the judgment could be sustained or was entered under any of the other subdivisions of the section. The parties also discuss the validity or invalidity of the 1947 wardship order. We think that order was valid. But whether it was valid or not is a false factor in this case. That order resulted in the child being removed from appellant's custody. By her subsequent actions appellant has abandoned the child. That is so whether the 1947 order was valid or invalid.
 We realize that the record shows that appellant has made a praiseworthy and apparently successful effort to rehabilitate herself. We have no doubt of her present sincere desire to care for Linda. It is a most serious responsibility to deprive a parent of her child. But the Legislature has provided that if the child is abandoned, as defined in the section, the trial court may enter such an order. The weight to be given to the rehabilitation of appellant and her excuses for her past conduct was for the trial court. It has found the facts required by law. Those findings are supported. Therefore, this court must affirm.
 The judgment appealed from is affirmed.
 Bray, J., and Wood (Fred B.), J., concurred.