Filed 8/2/13  In re Ava H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re AVA H., a Minor. | D063284 |
| FRANCISCO M. et al., | |
| Petitioners and Respondents, | (Super. Ct. No. A58238) |
| v. | |
| PHILLIP M., | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Objector and Appellant.

Stocks & Colburn and Janis K. Stocks for Petitioners and Respondents.

Lelah S. Fisher, under appointment by the Court of Appeal, for Minor.

Phillip M. appeals the judgment declaring his daughter, Ava H., free from his custody and control (Fam. Code, § 7822, subd. (a)(2))[1] upon the petition of Ava's maternal grandmother and stepgrandfather, Lisa M. and Francisco M. (individually, grandmother and grandfather; together, the grandparents). Phillip contends there is not substantial evidence to support the finding that he left Ava with the grandparents with the intent to abandon her. We affirm.

## BACKGROUND

In March 2007, Ava was born to Emily H. Phillip was present at the birth, as were the grandparents, and Phillip's name is on Ava's birth certificate. After being released from the hospital, Emily and Ava went to live with the grandparents. Phillip stayed with friends and had sporadic contact with Ava. In April or May, Phillip was arrested and incarcerated for a drug offense. In July or August, he was released and began living in an apartment with Emily and Ava. Emily and Ava spent every day at the grandparents' home.

In December 2008, the grandparents suspected Phillip was using drugs or alcohol, and Emily and Ava began spending more time at the grandparents' home. By April 2009, it was clear that Phillip was using drugs or alcohol. In May, Emily and Phillip ended their relationship, and Emily and Ava moved in with the grandparents. Phillip had sporadic contact with Ava.

---

[1]     Further statutory references are to the Family Code.

In December 2009, Phillip appeared at the grandparents' home under the influence of drugs or alcohol. They asked him to leave. In March 2010, Phillip had one visit with Ava[2] and his whereabouts became unknown. On July 16, the family court granted legal and physical custody of Ava to Emily and ordered supervised visitation for Phillip upon proof of 60 days' sobriety. Phillip received actual notice of the family court case but decided not to appear after reading declarations that said "horrible things" about him.

In August 2010, Phillip entered a drug rehabilitation program in Vista. He was released from the program in May 2011. The grandmother did not know Phillip was in the program and had no communication with him during that time. Phillip testified that while he was in the program, Emily brought Ava to see him twice, once in December 2010 and once in March 2011.[3] While he was in the program, Phillip did not seek a change in the visitation order because he believed he "needed to graduate first and gain some stability first." Later, he "[j]ust wasn't prepared yet to be there for [Ava]." In December 2010, Phillip's mother wrote to the grandparents that Phillip "calls me every few weeks, is doing well."

In June 2011, Emily moved out of the grandparents' home and the grandparents had no further contact with her. In July, Phillip went to the grandparents' home and began monthly visits with Ava. According to the grandparents, this was Phillip's first contact with Ava in at least 15 months. Phillip said he would like to see Ava from time

2    Phillip also attended a couple of Ava's T-ball or soccer games when she was three to five years old.

3    The grandmother testified this was "highly unlikely."

to time.  Between July and October, there were five visits.[4]  There were no visits in November or December.  In November, Phillip went to Alaska to work for several months.  He returned to San Diego for a month, then visited relatives and friends in other states.  While he was gone, the grandmother had no communication with him, although Phillip might have called the grandfather once.

In March 2012, the grandparents filed a petition to declare Ava free from Emily's custody and control.  In April, when Phillip returned to San Diego, the grandparents met with him.  In April or May, Phillip had a visit with Ava.  His behavior led the grandparents to suspect he was using drugs, but Phillip claimed he had not used drugs since completing the rehabilitation program.  In April or May, Phillip failed to show up for a visit.  In June, he told the grandparents he was going to Maine for a month.  He was gone four months.

On June 26, 2012, the grandparents filed their petition to declare Ava free from Phillip's custody and control, alleging the following:  Phillip left Ava in the grandparents' care "since her birth, and off and on, for more than six (6) months during her lifetime. . . . Since [Ava's] birth, [Phillip] has only had token communication with the [grandparents], for a period of over six (6) months, all with the intent on [Phillip's] part . . . to abandon [Ava] for more than six months."

In August 2012, Phillip returned from out of state and contacted the grandparents.  At the grandparents' invitation, Phillip had dinner with them and Ava at the grandparents'

---

4       Phillip testified that he visited Ava on Halloween 2011.

home. In August or September, Phillip hired an attorney in an effort to obtain unsupervised visitation. After that, Phillip was served with the grandparents' petition. In September, Phillip visited Ava once. In October, the court found that Emily had failed to communicate with and support Ava for at least one year.

At the conclusion of trial in December 2012, the court stated that viewing the "time line . . . even in kind of the best case scenario for [Phillip] from the time Ava has been two he really has been completely out of the picture." The court cited three periods during which Phillip had no contact with Ava, or only token communication: eight months preceding Phillip's appearance at the grandparents' home in December 2009; 12 months preceding December 2010; and seven months between Halloween 2011 and May 2012. The court found that Phillip had left Ava in the custody and control of others; he had had no contact with her for at least one year; and his failure to communicate with Ava demonstrated he had abandoned her. The court declared Ava free from Phillip's and Emily's custody and control.

## DISCUSSION

A child may be declared free from parental custody and control if "[t]he child has been left by both parents or the sole parent in the care and custody of another person for a period of six months without any provision for the child's support, or without communication from the parent or parents, with the intent on the part of the parent or

5

parents to abandon the child."[5] (§§ 7822, subd. (a)(2) & 7820.) The petitioner must establish these elements by clear and convincing evidence. (§ 7821.) The purpose of section 7822 "is to promote the child's best interest 'by providing the stability and security of an adoptive home.' (§ 7800.) The statute is to 'be liberally construed to serve and protect the interests and welfare of the child.' (§ 7801.)" (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1009-1010.) On appeal, "[w]e simply determine whether there is substantial evidence, believed by the trial court, that supports the court's findings. [Citation.]" (*In re Marriage of Jill & Victor D.* (2010) 185 Cal.App.4th 491, 503 (*Jill & Victor D.*).)

Phillip first contends section 7822, subdivision (a)(2) is inapplicable here. He argues the grandparents should have proceeded under section 7822, subdivision (a)(3), which applies when "[o]ne parent [Phillip] has left the child in the care and custody of the other parent [Emily] for a period of one year . . . ." Here, "both parents," Phillip and Emily, left Ava "in the care and custody of [the grandparents]" within the meaning of section 7822, subdivision (a)(2). The grandparents, not Emily, are the petitioners, and they correctly proceeded under section 7822, subdivision (a)(2).

Phillip next contends he did not leave Ava, as required by section 7822, subdivision (a)(2), because the family court order deprived him of custody. Phillip is incorrect.

---

5     Here, the petition alleged that Phillip failed to support Ava, but the court found that Phillip did provide support. The statute does not require both a failure to support and a failure to communicate; we discuss only whether there is substantial evidence that Phillip failed to communicate with Ava.

6

"[A] parent 'leaves' a child by ' "*voluntarily surrender*[*ing*]" ' the child to another person's care and custody." (*In re Amy A.* (2005) 132 Cal.App.4th 63, 69 (*Amy A.*).) "[A] parent will not be found to have voluntarily left a child in the care and custody of another where the child is effectively 'taken' from the parent by court order [citation]; however, the parent's later voluntary inaction may constitute a leaving with intent to abandon the child." (*Jill & Victor D., supra,* 185 Cal.App.4th at p. 504.) "[T]he leaving-with-intent-to-abandon-the-child requirement of section 7822 can be established by evidence of a parent's voluntary inaction after an order granting primary care and custody to the other parent. [Citations.] [¶] Simply stated, 'nonaction of the parent after a judicial decree removing the child may convert a [judicial] "taking" into a "leaving" [of a child by the parent].' [Citations.]" (*Ibid.*)

Here, Phillip's "repeated inaction in the face of the custody order provides substantial evidence he voluntarily surrendered his parental role and thus 'left' [Ava] within the meaning of section 7822." (*Amy A., supra,* 132 Cal.App.4th at p. 70.) In *Amy A.* the mother and daughter moved out of the father's home at his suggestion. The father refused to have any contact with his daughter for more than two years. During that time, the mother obtained a divorce; the court granted her sole legal and physical custody and granted the father visitation. (*Id.* at p. 66.) The mother remarried, and the court granted her husband's section 7822 petition. (*Amy A.*, at pp. 65, 67.) This court rejected the father's contention that the custody order precluded a finding he had left his daughter, noting he had not appeared in the divorce proceedings or made any attempt to seek

modification of the custody order or exercise his visitation rights. (*Id.* at p. 70.) *Amy A.* is on point here.

Phillip relies on *In re Jacklyn F.* (2003) 114 Cal.App.4th 747 (*Jacklyn F.*), which is distinguishable from the instant case. There, the grandparents filed a guardianship petition three days after the mother left the child in their care. The mother filed opposition, sought the child's return and appeared at a hearing slightly more than a month after the petition was filed. The reviewing court concluded, "[o]nce the guardianship was granted, . . . the minor's custody status became a matter of judicial decree, not abandonment." Thus, the mother's "conduct following the granting of the guardianship—which included sending 'stacks' of letters to the minor but failing to visit her—did not constitute 'parental nonaction' amounting to a leaving." The court did "not discount the possibility that, under different circumstances, it might be proper to conclude that a parent has 'left' a child within the meaning of section 7822 despite court intervention. . . ." (*Id.* at p. 756.) Such circumstances are present in Phillip's case. Unlike the mother in *Jacklyn F.*, he made little if any effort to communicate with Ava for at least a year after the family court made its custody order. (*Id.* at p. 747.)

Finally, Phillip contends the grandparents failed to prove he intentionally abandoned Ava. He relies largely on his own testimony concerning his contact with Ava and his unsuccessful attempts at further contact. The grandmother refuted Phillip's testimony and the court impliedly found it not credible. " 'The questions of abandonment and of intent . . . are questions of fact for the resolution of the trial court.' [Citation.]" (*Jill & Victor D., supra,* 185 Cal.App.4th at p. 506.) "[W]e do not pass on the credibility

8

of witnesses, resolve conflicts in the evidence, or determine the weight of the evidence. [Citation.]" (*Id.* at p. 503.)

" 'The controlling issue for a finding of abandonment is the subjective intention of the parent[,]' " but " '[i]ntent to abandon . . . may be found on the basis of an objective measurement of conduct, as opposed to stated desire.' " (*In re Brittany H*. (1988) 198 Cal.App.3d 533, 550.) "In determining a parent's intent to abandon, the trial court may consider not only the number and frequency of his or her efforts to communicate with the child, but the genuineness of the effort under all the circumstances [citation], as well as the quality of the communication that occurs [citation]." (*In re B.J.B.* (1986) 185 Cal.App.3d 1201, 1212.) "The . . . failure to communicate is presumptive evidence of the intent to abandon. If the parent or parents have made only token efforts to . . . communicate with the child, the court may declare the child abandoned by the parent or parents." (§ 7822, subd. (b).) "The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period." (*Amy A., supra,* 132 Cal.App.4th at p. 68, citing *In re Daniel M*. (1993) 16 Cal.App.4th 878, 885.) Under these criteria, substantial evidence supports the court's findings that Phillip left Ava in the grandparents' care and custody for six months, without communication, with the intent to abandon her.

DISPOSITION

The judgment is affirmed.


                                                                    HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.