Filed 3/27/23  Adoption of S.A. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| Adoption of S.A., a Minor. | C095733 |
| T.S., | |
| Plaintiff and Respondent, | (Super. Ct. No. 21CVSA6619) |
| v. | |
| M.A., | |
| Defendant and Appellant. | |

Appellant M.A. (father) appeals from the trial court's order granting a petition filed by the minor's stepfather, Thomas, to terminate appellant's parental rights based on abandonment.  (Fam. Code, § 7822.)[1]  Appellant contends the evidence was insufficient to support the finding he left the minor with the intent to abandon her.  We shall affirm.

---

[1] Undesignated statutory references are to the Family Code.

1

## I. BACKGROUND

On April 8, 2021, the minor's stepfather, Thomas, filed an adoption request and accompanying petition to declare the minor free from appellant's custody. Thomas alleged that he is married to the minor's mother, that minor S.A. (born May 2010) was then 10 years old, and that appellant had left the minor in the care of mother since February 15, 2016, without support or communication, and with the intent to abandon the minor. The matter came on for citation hearing on June 23, 2021, and the court appointed counsel for appellant. Appellant objected to the termination of his parental rights.

### A.        *Minor's Birth in 2010 to November 2019*

Mother had never been married to appellant. Their relationship was "on and off," but appellant had moved in with mother after she became pregnant with the minor. Mother left appellant when appellant, who was using drugs, came to the minor's third birthday party under the influence. Mother and appellant have been in and out of court since that time.

Family law files (of which the trial court took judicial notice) reflect appellant filed a petition to establish a parental relationship and requested custody and visitation orders in June 2014.[2] The court issued a temporary joint custody order. On August 12, 2015, the court signed custody and visitation orders providing for joint legal custody, physical custody to mother, and permitting her to move to San Diego with liberal visitation for appellant during summer, holidays, vacations, and whenever mother returned to the Shasta area. Mother, however, returned from San Diego with the minor within less than a year.

---

[2] The court took judicial notice of all filings, pleadings, proceedings, and orders in 21CVSA6619 (the instant matter), 14CVFL0180168, and 12CVFL028874.

The minor lived with appellant and the paternal grandfather during the first half of 2016. Around this time, the minor reported appellant would do drugs in the living room and tell her not to tell mother about the individuals who would come to the home. Mother assumed custody at the end of the summer of 2016. Mother told appellant, sometime in late 2016 or early 2017, that it would be the last time he would see the minor until he got his life together and maintained sobriety, because he was permitting known drug addicts to be in his home. She allowed the paternal grandfather to visit the minor but instructed him not to allow appellant contact with the minor. Nonetheless, appellant related there were times he saw the minor while she was in the care of the paternal grandfather. Appellant also had contact with the minor on numerous occasions while the minor was with the paternal grandmother. Appellant also claimed to have made requests of mother to see the minor in 2016 and 2017, which were denied.

At the hearing on the petition, Mother testified that between 2016 and 2018, appellant sent no letters or gifts to the minor, and would contact mother only inconsistently, about every eight months. Mother maintained the same phone number, same Facebook messenger account and was available on social media, and the paternal grandfather knew where she lived. Mother learned of the unapproved contact between appellant and the minor taking place while the minor was with the paternal grandparents in 2017; it was disclosed during the minor's therapy and, as a result, mother limited contact with the paternal grandparents. The minor has no recollection of seeing appellant after 2017.

Nonetheless, appellant testified he called on Thursdays in the summer and fall of 2017 to talk to the minor during a scheduled weekly ballgame when he knew the minor would be sitting with the paternal grandmother. The paternal grandmother testified appellant called "faithfully"; appellant testified he made eight to 12 such contacts; the paternal step grandfather testified he witnessed five such calls; mother testified only having attended approximately three to five games with the minor; the minor initially did

3

not recall having spoken with appellant at any of the games but later recalled one time that appellant was on the phone with the paternal grandmother at a game. Appellant also claimed to have received over a dozen drawings from minor in 2018 and to have sent letters to the minor through the paternal grandmother. Appellant said he sent six or seven letters in 2018 and three letters after his October 2018 release from incarceration. The paternal grandmother testified she had delivered only one such letter. In 2018, appellant asked to see the minor and mother refused because appellant was still using drugs.

Appellant claimed to have had sporadic telephone contact with the minor through relatives after his October 2018 release from custody up until his reincarceration in February 2019. In September 2018, mother had requested the custody and visitation orders be modified. On January 10, 2019, the court granted mother's request to modify the custody and visitation orders. Appellant did not appear at the hearing. The court ordered appellant's visitation with the minor to be at mother's discretion.

Appellant was released from custody in June 2019 and, according to appellant, he began video chatting and having phone conversations with the minor. The minor did not corroborate these alleged contacts. On September 4, 2019, appellant filed a request to change the custody and visitation orders. Mother reported that, as of October 31, 2019, appellant had not seen the minor in two and a half years. Appellant had failed a rehabilitation program in Stockton and mother was asking for appellant to show some stability before reintroducing him to the minor.

B.      *November 2019 to February 2020*

According to appellant, he did not have any contact with the minor, through any medium, after November 2019. He appeared in court on December 16, 2019, and requested a contested hearing on child custody. He was working during this time but did not provide any child support. Mother reported appellant had never provided any child support.

4

After the January 2020 contested hearing, the court authorized appellant to participate in the minor's therapy with the direction of the minor's therapist. The minor's therapist subsequently reported that she was concerned about the minor's emotional health, as the minor was emotionally fragile and working on learning to regulate her anxiety and depression. The minor had also expressed she was fearful appellant was mad at her. In accordance with the court's recommendation, the minor's therapist had begun meeting with appellant to evaluate his progress in his rehabilitation program and to initiate trust between appellant and mother. The therapist planned to begin having sessions with the minor and appellant together to help the minor heal her worries and fears in a safe place.

C.      *February 2020 to Present*

On February 21, 2020, the court signed an order after a hearing awarding mother full legal and physical custody of the minor, with appellant to have regular and year-round visits, as agreed upon by the parties. The parents were permitted to begin professionally supervised visits at one hour per week through Quickstart when they felt (with input from the minor's therapist) that it was appropriate. Appellant was expressly permitted to write letters to the minor and directed by the court to send them to the minor's therapist. Appellant was also instructed that he could correspond with the therapist regarding the minor's progress, and he should follow the recommendations of the therapist, including visits with the minor in the therapist's office or professionally supervised visits.

Appellant did not send letters for the minor to the therapist and participated in a total of only three sessions with the therapist.[3] Except for possibly a single attempt in

---

[3] It is unclear how many, if any, of these three sessions took place after the February 21, 2020 court order, or if these three sessions were the sessions referred to by the therapist in her earlier report.

June 2020, appellant did not contact mother after that time.[4]  He relapsed and was reincarcerated in June 2020.

On July 22, 2020, appellant filed another request to change the custody and visitation orders, but the matter was dropped at his request after unsuccessful service. Appellant also noted he had filed the request before he knew he was being sent to state prison.  Appellant made no efforts to change the custody or visitation orders after that time.  He was sent to state prison in October 2020.  He claimed he sent three letters directly to the minor since his October transfer to state prison but that they were returned. He had no other contact and was still incarcerated when Thomas filed the instant petition in April 2021 seeking to adopt the minor and declare her free from appellant's custody. In June 2021, appellant sent a single letter to the minor's therapist.

D.     *Court Investigator's Report and Minor's Statements*

The court-appointed investigator and the court both interviewed the minor, who was 11 years old at the time of the hearing on Thomas's petition.  The minor reported having last seen appellant when she was six or seven years old.  She remembered "bad people" who did drugs at appellant's home and being told not to tell her mother about what went on at his house.  The minor explained that she did not like appellant because he used to threaten her and use drugs around her.  She used to be afraid of him, but it had been so long since she had seen him, she was not certain if she was still afraid of him. Her wish was for Thomas, who had been a great father to her and who she referred to as "dad," to be permitted to adopt her.  She felt safe and happy in the home, and she would be happy to change her last name if he was permitted to adopt her.

---

[4] Mother testified that she last heard from appellant in 2018.  She later testified that appellant may have tried to get a hold of her before Father's Day (June 21, 2020) but mother refused him because he did not follow up with the minor's therapist.

The court-appointed investigator recommended appellant's parental rights be terminated and Thomas be permitted to adopt the minor.

*E.      The Court's Ruling*

After hearing testimony from appellant, mother, Thomas, and several paternal relatives, and interviewing the minor at the request of the parties, the trial court took the matter under submission. The court issued a lengthy and detailed statement of decision setting forth the evidence it considered, a summary of the relevant evidence, its analysis of the legal issues, and its finding by clear and convincing evidence that appellant abandoned the minor within the meaning of section 7822, subdivision (a)(3) and that it was in the minor's best interest to grant Thomas's petition to free the minor from appellant's custody and control. The court terminated appellant's parental rights, freeing the minor for adoption by Thomas.

Father appealed. Neither party requested oral argument and the matter was deemed submitted for decision in this court on February 22, 2023.

## II. DISCUSSION

Appellant contends there is insufficient evidence to support the trial court's findings that he "left" the minor in mother's care and custody and intended to abandon the child within the meaning of section 7822, subdivision (a)(3).

A proceeding to free a child from the custody and control of a parent may be brought when the child has been left by one parent "in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) This statute is liberally construed "to serve and protect the interests and welfare of the child," (§ 7801) and the court's findings must be based on clear and convincing evidence (§ 7821). The failure to provide support or the failure to communicate is presumptive evidence of the intent to abandon. (§ 7822, subd. (b).) "If

7

the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents." (*Ibid.*)

" 'The questions of abandonment and of intent . . . , including the issue of whether the statutory presumption has been overcome satisfactorily, are questions of fact for the resolution of the trial court.' " (*In re Marriage of Jill & Victor D.* (2010) 185 Cal.App.4th 491, 506.) " 'The appellant has the burden of showing the finding or order is not supported by substantial evidence.' " (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1011.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal 5th 989, 1011-1012.) We do not pass on the credibility of witnesses, resolve conflicts in the evidence, or determine the weight of the evidence, but simply determine whether there is substantial evidence, believed by the trial court, that supports the court's findings. (*In re Marriage of Jill & Victor D., supra*, at p. 503.)

A.      *"Left" Minor with Another*

We first consider whether the evidence supports the trial court's finding that appellant "left" the minor in mother's care and custody within the meaning of section 7822. We conclude the evidence supports the court's finding that he voluntarily surrendered his parental role and "left" the minor in mother's care.

A "parent 'leaves' a child by ' "voluntarily surrender[ing]" ' the child to another person's care and custody." (*In re Amy A.* (2005) 132 Cal.App.4th 63, 69, italics omitted.) "Case law consistently focuses on the voluntary nature of a parent's

8

abandonment of the parental role rather than on *physical* desertion by the parent." (*Ibid.*) The term "left" connotes voluntary action and therefore abandonment does not occur when the child is taken from parental custody against the parent's wishes. (*Ibid.*) However, the mere fact the court has awarded sole custody to one parent does not necessarily defeat a petition under section 7822. (See *In re Amy A., supra,* at p. 70.) The nonaction of a parent, such as failure to adequately pursue visitation rights, may transform a judicial taking into a parental abandonment. (*In re Jack H.* (1980) 106 Cal.App.3d 257, 264; accord, *In re Jacqueline H.* (1979) 94 Cal.App.3d 808, 816; *In re Conrich* (1963) 221 Cal.App.2d 662, 666-667; *In re Barton* (1959) 168 Cal.App.2d 584, 587-590; *In re Maxwell* (1953) 117 Cal.App.2d 156, 162-166.) Thus, if, despite a custody order, the noncustodial parent is not precluded from maintaining a parental relationship through contacting and supporting the child, the noncustodial parent's failure to do so may constitute "leaving" the child, as well as abandonment. (Cf. *In re Jacklyn F.* (2003) 114 Cal.App.4th 747, 756.)

Appellant has been in and out of the minor's life since the minor's third birthday. After November 2019, appellant made little effort to take any parental responsibility for the minor's care. He appeared at and contested a few court hearings and participated in a few therapy sessions. Beyond these minimal efforts, he was content to leave mother all the parental responsibility. He did not have any contact with the minor after November 2019. And even during those periods wherein he was not incarcerated and had a job, he did not provide any financial support.

Even assuming, as appellant argues, that mother's actions in restricting his contact with the minor from 2013 through 2019 (whether unilaterally or through court orders) would negate a finding that he had "left" the minor within the meaning of section 7822, appellant's inaction after February 21, 2020, was entirely voluntary.

9

After the January 2020 hearing, the court permitted appellant to participate in the minor's therapy with the direction of the minor's therapist. Appellant participated in only three sessions.

On February 21, 2020, the court signed an order after hearing awarding mother custody but permitting appellant regular and year-round visits, as agreed upon by the parties. The parents were permitted to begin professionally supervised visits for one hour per week through Quickstart when they felt (with input from the minor's therapist) it was appropriate. Yet appellant did not contact mother to make any arrangements for visitation. Nor did he request input from the minor's therapist as to when such supervised visits would be appropriate.

The court's February 21, 2020 order also expressly permitted appellant to write letters to the minor and directed him to send the letters to the minor's therapist. Appellant did not send a single letter for the minor to the therapist over the next 15 months. And while he claimed to have unsuccessfully sent three letters directly to the minor, he could not produce these alleged returned letters. Moreover, appellant admitted he knew that he was *supposed* to send the letters through the minor's therapist, so any failure of his letters to reach the minor was not a result of an involuntary restriction. And, in any event, three letters (that he knew the minor did not receive) over a 15-month period of the minor's young life may be considered a mere token effort, at best.

Further, appellant was also instructed that he could correspond with the therapist regarding the minor's progress, and he should follow the recommendations of the therapist, including visits with the minor in the therapist's office or professionally supervised visits. Appellant did not follow through beyond his initial three sessions. To the extent appellant was prevented from progressing to professionally supervised visits because of his reincarceration and substance abuse, we note appellant's actions underlying his incarcerations were voluntary and, in any case, "being incarcerated does not, in and of itself, provide a legal defense to abandonment of children." (*In re Rose G.*

10

(1976) 57 Cal.App.3d 406, 424; see also *In re Maxwell, supra*, 117 Cal.App.2d at p. 165 [three-year nonaction by parent after child was made ward of juvenile court; trial court's finding of abandonment upheld despite mother's rehabilitation from alcoholism].)

Appellant admitted that he knew he could go into court to try to obtain a modification of the visitation orders. In fact, he filed such a request on July 22, 2020, to change custody and visitation. But the matter was later dropped from calendar upon his request and for failure to serve. Thus, although he knew how to take steps to have the visitation order changed, if needed, appellant did not avail himself of the opportunity to seek a different visitation order.

In sum, appellant, by his own volition, failed to meaningfully exercise the rights given to him in the February 21, 2020 court order or take advantage of any of the opportunities he was provided for continuing his relationship with the minor. Instead, he simply left the minor in mother's care during this time. Thus, there was substantial evidence from which the trial court could have found it highly probable that appellant voluntarily surrendered his parental role and "left" the minor within the meaning of section 7822. (See *In re Amy A., supra*, 132 Cal.App.4th at p. 70.)

B.      *Intent to Abandon*

We next address appellant's argument the evidence was insufficient to support the finding that he intended to abandon the minor within the meaning of section 7822. We reject this contention as well.

Under section 7822, subdivision (b), a parent's failure to provide identification, provide support, or communicate with his or her child, is presumptive evidence of an intent to abandon and his or her token efforts will not overcome this statutory presumption. (*Adoption of A.B.* (2016) 2 Cal.App.5th 912, 923.) In determining a parent's intent to abandon, the superior court must objectively measure the parent's conduct, "consider[ing] not only the number and frequency of his or her efforts to communicate with the child, but the genuineness of" the parent's efforts. (*In re B.J.B.*

11

(1986) 185 Cal.App.3d 1201, 1212.) There is no requirement that a parent intend to abandon the child permanently. (*In re Daniel M.* (1993) 16 Cal.App.4th 878, 883.) It is sufficient that the parent had the intent to abandon the child during the statutory period. (*Id.* at p. 885 [construing predecessor statute]; see also *In re Amy A., supra*, 132 Cal.App.4th at p. 68.)

Here, appellant had no communication with the minor and provided no child support for the minor for over one year prior to Thomas's filing of the instant petition. Appellant's failure to communicate or provide support gave rise to a presumption that he intended to abandon the minor. The evidence recounted above establishes that appellant did not overcome the statutory presumption.

Appellant relies on his intermittent efforts at communication and visitation prior to February 2020 to rebut the presumption. Efforts made prior to February 2020 do not assist him in overcoming the statutory presumption, as he made little to no effort between February 2020 and April 2021 (a period of over one year). Indeed, the entirety of his efforts during the year preceding Thomas's petition were the filing of, but failure to follow through with, a request to modify custody and visitation, and three letters he allegedly sent directly to the minor after his October 2019 incarceration. We do not pass on the credibility of witnesses, resolve conflicts in the evidence, or determine the weight of the evidence. (*In re Marriage of Jill & Victor D., supra*, 185 Cal.App.4th at p. 503.) Yet, these letters, even if sent and returned, may properly be deemed merely a token effort at communication, and insufficient to overcome the presumption that he intended to abandon the minor during the statutory period.

Moreover, failure to communicate *or* provide support gives rise to the presumption that he intended to abandon the minor. (§ 7822, subd. (b).) Appellant never provided support for the minor. And while he argues now that a parent's failure to support a child when they do not have the ability to do so does not, by itself, prove intent to abandon, appellant never established that he was financially unable to provide support, whether

during his incarceration or during those periods when he was not incarcerated and/or employed. Unlike the authority he cites, it was not undisputed that he was financially unable to provide any support during any of the period in question. (Cf. *In re T.M.R.* (1974) 41 Cal.App.3d 694, 698, fn. 2.) In fact, when questioned why he did not provide support during his period of employment from June 2019 to January 2020, appellant explained, *not* that he did not have the resources, but that he "wasn't even given contact or anything."

Appellant's efforts at communication or support, if any, for over a year preceding Thomas's petition were sparse. The evidence supports the court's finding that they were, at best, token efforts that did not overcome the presumption that he intended to abandon the minor during the statutory period.

### III. DISPOSITION

The judgment (terminating appellant's parental rights) is affirmed.

/S/

_____

RENNER, Acting P. J.


We concur:


/S/

_____

KRAUSE, J.


/S/

_____

EARL, J.

13