[S. F. No. 5960. Department Two.—August 15, 1912.]

In the Matter of the Adoption of MARGARET COZZA.

ADOPTION—PROCEEDINGS FOR ARE STATUTORY.—The adoption of a child was a proceeding unknown to the common law, and it exists in this state only by virtue of the statute, which, in section 224 of the Civil Code, expressly prescribes the conditions under which adoption may be legally effected.

ID.—CONSENT OF PARENTS WHEN ESSENTIAL—JURISDICTION.—Consent of the parents lies at the foundation of statutes of adoption, and under our law this consent is made absolutely essential to confer jurisdiction on the superior court to make an order of adoption, unless the conditions or exceptions exist specially provided by the statute itself, and which render such consent unnecessary. Unless such consent is given, or, for the exceptional causes expressly enumerated is dispensed with, the court has no jurisdiction in the matter.

ID.—CHILD IN CUSTODY UNDER ORDER OF JUVENILE COURT—DESERTION OR ABANDONMENT BY PARENT.—In proceedings for the adoption of a minor, the fact that the child had been taken from the custody of the mother and placed under the control of a third person, under an order of the juvenile court, and the circumstances surrounding such taking, can only be considered for the purpose of determining whether the child was deserted or abandoned by its parents within the meaning of section 224 of the Civil Code, and hence, by the terms of that section, the consent of the mother was rendered unnecessary.

ID.—ORDER FOR ADOPTION WITHOUT PARENT'S CONSENT—COURT WITH-
OUT DISCRETION TO MAKE—INTEREST OF CHILD.—In adoption pro-
ceedings, no discretion is committed to the superior court to make
an order therefor, regardless of the consent or wishes of the parent,
or the existence of the prescribed conditions dispensing with such
consent and solely because it is satisfied that the interest of the
child will be promoted thereby.

ID.—PARENTS DERELICT IN PARENTAL DUTY—PROCEEDINGS AUTHORIZED
TO TAKE CUSTODY OF CHILDREN.—If there exists such dereliction of
parental duty as necessitates the taking of children out of the cus-
tody of their parents, the state, as *parens patriae,* in aid of the wel-
fare of children, has provided means, through guardianship or other
judicial proceedings, or under the juvenile court law, by which it
may be accomplished without completely destroying the natural
relation existing between the parent and child.

ID.—STATUTORY PROCEEDINGS FOR ADOPTION MUST BE STRICTLY CON-
STRUED—CONDITIONS DISPENSING WITH PARENT'S CONSENT MUST BE
CLEARLY ESTABLISHED.—The power of the court in adoption proceed-
ings to deprive a parent of his child being in derogation of his
natural right to it, and being a special power conferred by the stat-
ute, such statute must be strictly construed, and in order to warrant
the exercise of the power and sustain an order for adoption made
in opposition to the wishes and against the consent of the natural
parent on the ground that conditions prescribed by statute exist
which make that consent unnecessary, the existence of such condi-
tions must be clearly proved, and the evidence bring them within the
terms and intent of the statute.

ID.—DIVORCE—PROVISION OF DECREE AWARDING CUSTODY OF CHILDREN.—
In proceedings for divorce the court has power and authority to make
such orders as it may deem necessary and proper for the  custody
of the children of the marriage, without being constrained in any
respect by the cause for which the divorce is granted, and may at
any time vacate or modify such order.

ID.—CONSENT OF PARENT DIVORCED FOR CRUELTY—SECTION 224 OF CIVIL
CODE CONSTRUED.—While section 224 of the Civil Code provides
generally that consent shall not be necessary to the adoption of chil-
dren of the marriage from the parent against whom the decree is
granted on the ground of cruelty, it stops there, and does not as-
sume to interfere with the orders of the court in divorce proceedings
as to the custody of children.

ID.—CONSENT OF GUILTY PARENT AWARDED CUSTODY OF CHILDREN NECES-
SARY TO ADOPTION.—It is the intent of that section, when a divorce
is granted for cruelty and the custody of the children is awarded
absolutely to the innocent party, to dispense with the requirement
in adoption proceeding of the consent of the guilty parent.  Where,
however, such divorce decree absolutely awards the custody of the
children to the parent found guilty of the cruelty, that parent's con-

sent is absolutely essential to the validity of any order for their adoption, unless the children had been deserted or abandoned, within the intent and meaning of section 224 of the Civil Code.

ID.—CHILDREN MAY BE AWARDED TO MOTHER ADJUDGED GUILTY OF CRUELTY BY DIVORCE DECREE.—The fact that a mother has been guilty of cruelty toward her husband does not compel the court in awarding him a decree of divorce on that ground to also award the custody of the children to him.

ID.—DESERTION—CHILD REMAINING WITH NEIGHBOR AFTER RUNNING AWAY.—Permitting a child, who had run away from the home of its mother having its legal custody, to remain for a few days with the family of a neighbor, does not constitute desertion by the mother.

ID.—ABANDONMENT OF CHILD DEFINED—INTENT TO ABANDON.—In order to constitute abandonment of a child by the parent, there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same. There must be an intention to abandon, express or implied from the conduct of the parent respecting the child.

ID.—LEAVING CHILD IN CARE OF ANOTHER FOR ONE YEAR WITHOUT PROVISION FOR SUPPORT.—An abandonment of such character is that contemplated by section 224 of the Civil Code, in the provision that "any child left in the care and custody of another by its parent or parents, without any agreement or provision for its support for the period of one year, is deemed to be an abandoned child."

ID.—ABANDONMENT BY MOTHER—CHILD AWARDED TO CARE OF THIRD PERSON UNDER ORDER OF JUVENILE COURT—ABSENCE OF CONSENT OF MOTHER.—The fact that a child, without the consent of the mother having its custody and against her wishes and desire, was taken from her custody under an order of the juvenile court, and placed in that of a third person, and remained in the custody of the latter for upwards of a year, despite the personal efforts of the mother to secure its return, and while she remained under the mistaken belief that she could not enforce its return by judicial proceedings, does not establish an abandonment of the child by the mother.

ID.—APPEAL BY PARENT FROM ORDER OF ADOPTION—REVERSAL—RESTORATION OF CHILD TO PARENT—VOID ORDER OF JUVENILE COURT—HABEAS CORPUS.—On an appeal by a parent from an order for the adoption of a child, the custody of which had been committed to a third person by an order of the juvenile court, the appellate court cannot, on reversal of the order, direct the child to be restored to the parent. If the juvenile court proceedings are void, and the child illegally detained thereunder from its parent, its possession may be obtained under *habeas corpus* proceedings.

APPEAL from an order of adoption of the Superior Court of Santa Clara County. P. F. Gosbey, Judge.

The facts are stated in the opinion of the court.

H. A. Blanchard, for Appellant.

Frank H. Benson, Daisy M. Bowen, and A. M. Free, for Respondents.

LORIGAN, J.—This is an appeal from an order of adoption taken by Filomena Setaro, formerly Filomena Cozza, the natural mother of the child.

The father and mother of the said child were divorced by a decree of the superior court of the state of Washington entered February 27, 1904, on the ground of extreme cruelty on the part of the wife toward her husband, and by the decree the two children of the marriage, the above Margaret and her sister Mary were given to their mother, the father being required to pay ten dollars per month in aid of their support. The decree provided that the children should not be removed from the jurisdiction of the superior court rendering the decree. The mother desired to come to her sister in California and take the two children with her, but the father objected to Margaret going, and an arrangement was made between them by which Margaret should remain in Washington, the father to place her in a convent in Tacoma and pay for her support there, and whenever the mother should thereafter desire it she might take the child. Margaret was then about two years of age; her sister Mary a few years older. Margaret was accordingly placed in the convent and the mother and Mary came to Santa Clara County in this state, where, about two years afterward, the mother married one A. Setaro. Margaret remained under the control of her father in Tacoma for about four years. She had been taken from the convent and placed in the custody of a family in Tacoma with whom her father lived. Information having been received by the mother and her sister Mary that she was being cruelly treated by her father, Mary was anxious to go to Tacoma and bring Margaret back with her. It does not appear that the stepfather was informed of this intention, and, in fact, while the mother had expressed a willingness that Mary should go, the latter left for that purpose without notifying her mother that she then intended to do so, and without having obtained the

permission of either her mother or stepfather. When Mary reached Tacoma she went to live with her father and kept house for him and Margaret for about six months. Observing that the information of ill-treatment toward Margaret by her father was true, and learning further that he contemplated remarriage, Mary prevailed on him to allow her to take Margaret to her mother in California, to which he consented, though hesitatingly, and advanced the money to defray their expenses. Immediately after the children came into the household of their mother and stepfather in San Jose, the latter objected to their remaining there at his charge and expense, insisting that their support should be borne by their natural father under the decree of divorce, and was particularly irritated by the circumstance that a portion of the money which had been given by their father to the children when they left Tacoma had been spent for clothing for them, instead of being given to him for their support. There is no doubt but that this attitude of the stepfather toward the children was the occasion of considerable quarreling between himself and his wife, as it is equally clear that she begged and pleaded with him to let them remain. He was, however, obdurate and shortly thereafter consulted a deputy probation officer of the superior court of Santa Clara County, with the result that a complaint was sworn to by that officer, under the provisions of the "Juvenile Court Law Act" charging the girl Mary with persistent refusal to obey "the reasonable and proper orders and directions of her parents or guardians." Under this petition, which was filed April 29, 1909, not only Mary, but also Margaret, was taken from the custody of the mother by the officer. Mary was temporarily placed by order of the court in the custody of one of its probation officers, and Margaret was given into the charge of Mrs. I. C. Merriman, another of said officers. On May 14, 1909, Mary was by order of court returned to her mother, and on May 18, 1909, four days thereafter—Margaret being still in the custody of Mrs. Merriman—a complaint was filed against her by another of the probation officers of the court, making the same general charge as was made against her sister Mary. No notice of the filing of this last petition was given to the mother; no citation was served upon her and it does not appear that she was present at any time when the proceedings against Margaret were

heard. In fact the evidence quite clearly shows that neither she nor the stepfather was there. On May 28, 1909, an order of court in the proceeding was made, placing this child in the custody of Mrs. Merriman (in whose custody she then actually was by virtue of the order previously made in the proceedings against Mary) until the further order of the court, and a year afterward—on May 27, 1910—a similar order was made. From the time that this child was taken from the custody of her mother she remained theoretically in the custody of Mrs. Merriman under the order of the court. Actually, however, she was placed by Mrs. Merriman in the immediate care and custody of the petitioners in this proceeding for adoption, F. A. Marriott and his wife, the latter a daughter of Mrs. Merriman, and the child has resided in their family and been cared for by them ever since. Soon after the original order taking the children from the custody of the mother, the stepfather repented of his conduct and took Mary back into the family. He then joined with his wife in the effort she was making, and which she has all along made by herself and others acting in her behalf, to have her child Margaret restored to her. Both she and her husband are Italians, having but a limited and imperfect knowledge of the English language and ignorant of our laws. She was given to understand (whether correctly or incorrectly is of no consequence) that nothing could be done toward securing the restoration of her child until the end of the year for which period she was informed the court had ordered the child to be retained in the custody of Mrs. Merriman; she stated that she was so advised by attorneys whom she had consulted, and by others. This matter of a year arose from the fact that while the original order in the proceeding against Margaret was in fact, as appears by the record of the juvenile court, that the child be retained by Mrs. Merriman until its further order, it appears from the desk book record of the judge of the superior court in whose department the juvenile court proceeding was had (and so stated by him on the hearing) that the custody was ordered for one year. This accounts for the statement made by the mother and those aiding her, that in her efforts to have her child restored she was informed that nothing could be done until the year had expired. The mother during all of this time sought an opportunity to see and converse with her child,

a privilege which was invariably denied her. It may be said here, and it is not disputed, that both the stepfather and mother of the child are shown to be industrious, honest, and frugal people; possessed of a good home and considerable means; that the mother has endeavored and been anxious and desirous of having her child restored to her and that she and her husband are willing, competent, and able to take charge of her.

There is no evidence that the child Margaret was ever cruelly treated by her stepfather or her mother while with them, and there is no evidence of any want of maternal affection and love for the child. Failing to secure the return of her child through her own efforts and those of her relatives, and believing that she could not do so until the end of the year, some time after the expiration of that period, and on January 25, 1911, she filed a petition before the superior court exercising jurisdiction as the juvenile court and before the judge thereof who made the order respecting the child, asking that the court order the return of said child to her under its power to set aside, change, or modify an order for such custody at any time during the minority of said child, and asked that a citation be issued by the court and served upon Mrs. Merriman, in whose custody said child still remained. The citation was issued and served, February 10, 1911, being fixed by the court as the time for hearing on this petition. No hearing was then had, however; nor, as far as appears, has been had since, because on the very day set for hearing thereon a petition was filed by Mr. and Mrs. Marriott for an order of court allowing them to adopt said child. This petition alleged that the child was some eight years old, had for more than one year past been under the care and direction of Mrs. I. C. Merriman and in the immediate custody of petitioners; alleged the decree of divorce between the parents of the child in the superior court of the state of Washington on the ground of cruelty on the part of the mother of the child; averred that more than two years prior to the petition the father of the child had deliberately sent her out of his home and away from him, with the intention of permanently ridding himself of her care and custody, and that more than a year before the filing of the petition the mother of the child drove her from her house and home with similar intent and for a similar pur-

pose; that for more than one year last past neither of said parents had made any provision or agreement for the support of said infant, and nothing had been contributed by said parents or by either of them toward her support. It was further alleged that said child had been deserted and abandoned within the meaning of section 224 of the Civil Code of this state, and that the district attorney of the county of Santa Clara had consented to her adoption by petitioners.

No citation was issued or notice directed to the mother of the hearing of this application. In fact, the petitioners were proceeding on the theory that she was not entitled to any, or even to a hearing on the alleged facts of desertion and abandonment of her child, and that the adoption could be ordered without any notice to her, or without her consent. She appeared, however, and, after objecting to the jurisdiction of the court, answered, denying all the allegations of the petition saving that respecting the terms of the decree of divorce.

After hearing, the superior court made an order for the adoption of said child by petitioners, and this appeal is taken by the natural mother from that order.

In making its order the court found the fact as to the decree of divorce just as alleged in the petition for adoption and admitted in the answer, and held that as the decree of divorce in the state of Washington was granted on the ground of cruelty toward her husband upon the part of the mother of the child, her consent to its adoption was, under section 224 of the Civil Code, unnecessary; also found that said child had been more than eighteen months before the filing of the petition for adoption deserted by both its parents, and for more than said period had been ''left by said parents in the care and custody of one Isabelle C. Merriman, without any agreement or provision for its support, and said minor child being deserted by both of its parents and abandoned by both of its parents within the meaning of section 224 of the Civil Code of the state of California''; that these conditions, within the view of the section cited, rendered the consent of the mother unnecessary; and required only the consent of the district attorney of the county of Santa Clara, which had been given.

The only question necessary for consideration on this appeal affects the construction placed by the superior court on

section 224 of the Civil Code and its application under the evidence.

That section provides that "a legitimate child cannot be adopted without the consent of its parents if living . . . ; except, that consent is not necessary from a father or mother deprived of civil rights or adjudged guilty of adultery or cruelty, and for either cause divorced . . . or who has been judicially deprived of the custody of the child on account of cruelty or neglect" and except as further provided "neither is consent of any parent necessary in case of any abandoned child; . . . Any child deserted by both parents or left in the care and custody of another by its parent or parents without any agreement or provision for its support for the period of one year, is deemed to be an abandoned child within the meaning of this section" and "any abandoned child within the meaning of this section, if left in the care and custody of another person for one year or more, may, with the consent of the district attorney of the county where the person applying to adopt such child is a resident, be adopted by such person."

The adoption of a child was a proceeding unknown to the common law. The transfer of the natural right of the parents to their children was against its policy and repugnant to its principles. It had its origin in the civil law and exists in this state only by virtue of the statute which, as above stated, expressly prescribes the conditions under which adoption may be legally effected. Consent lies at the foundation of statutes of adoption, and under our law this consent is made absolutely essential to confer jurisdiction on the superior court to make an order of adoption, unless the conditions or exceptions exist specially provided by the statute itself and which render such consent of the parents unnecessary. Unless such consent is given, or, for the exceptional causes expressly enumerated is dispensed with, the court has no jurisdiction in the matter.

While we have set forth the circumstances surrounding the taking of this child from the custody of its mother and its retention by Mrs. Merriman under the order in the juvenile court proceeding, such evidence is to be considered here, as it could only be considered by the superior court in the adoption proceeding, for the purpose of determining whether the child was deserted or abandoned by its parents within the meaning of section 224 of the Civil Code, and hence, by the terms of

. that section, the consent of the mother was rendered unnecessary. Neither here nor in the superior court could it be considered in the adoption proceeding for any other purpose. Nor is discretion committed under adoption proceedings to the superior court to make an order therefor, if it deems that the interest of the child will be promoted thereby, regardless of the consent or wishes of the parent, or the existence of the prescribed conditions dispensing with such consent. Investing the court with such authority would be to make it the possible means of forcibly taking a child from its parent and transferring it to another person, against the protest and opposition of the parent, merely because the court deemed it advisable and for the benefit of the child that this should be done. No such power or discretion is contemplated or given by the law governing adoption. In the absence of consent or of the existence of such conditions as the quoted section prescribes, it is a matter of no consequence in the proceeding for adoption what may be the conduct of parents toward their children, their environment or home surroundings, or the moral or material advantage which the children might receive by being taken from the custody of their parents and placed elsewhere. If there exists such dereliction of parental duty as necessitates the taking of children out of the custody of their parents the state as *parens patriae,* in aid of the welfare of children,. has provided ample means by which it may be accomplished without completely destroying the natural relation existing between the parent and child. This is accomplished through guardianship or other judicial proceedings and even by virtue of the Juvenile Court Law Act itself, where temporary control of them may be taken, at the same time that there is preserved to the parents the right to have the children restored to them when conditions have changed so that the parents are fit to resume the primary obligation placed on them by nature and the law of caring for and supporting their children.

As the act of adoption is to sever absolutely the legal relation between the parents and child; to destroy their reciprocal relations and create entirely new ones between the adopting parent and the child, the law, recognizing the natural and sacred rights of natural parents to their children, will permit this to be done only with the consent of the parents, unless

under exceptional conditions, which it itself prescribes, such consent is declared unnecessary.

The power of the court in adoption proceedings to deprive a parent of his child being in derogation of his natural right to it, and being a special power conferred by the statute, such statute must be strictly construed, and in order to warrant the exercise of the special power and sustain an order for adoption made in opposition to the wishes and against the consent of the natural parent on the ground that conditions prescribed by statute exist which make that consent unnecessary, the existence of such conditions must be clearly proven, and the evidence bring them within the terms and intent of the statute. The law is solicitous toward maintaining the integrity of the natural relation of parent and child, and in adversary proceedings in adoption, where the absolute severance of that relation is sought, without the consent and against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation. Applying this rule to a consideration of the matter at bar. Here, the mother was refusing her consent to the adoption; actively opposing the making of such an order and asserting her natural and paramount right to her child. Every intendment should have been in favor of the claim of the mother under the evidence, and if the statute was open to construction and interpretation should have been construed in support of the right of the natural parent.

The court found that, notwithstanding her primary right to her child and its custody, she had lost all right to object to being deprived of it under the adoption proceeding, or to insist that this could not be done by order of the court without her consent, by virtue of the decree of divorce, and, further, because, she had deserted and abandoned it within the meaning and intent of section 224 of the Civil Code.

We are satisfied, however, that the court improperly construed the section as to the effect on consent of the decree of divorce as the terms of that decree stand, and that the evidence does not sustain the conclusion of the court that either the child had been deserted or had been abandoned by its mother within the meaning of said section 224, or deserted or abandoned at all so as to preclude the necessity for consent to its adoption.

Discussing these matters separately, and first, as to the effect of the decree of divorce on consent under the section. The trial court, reading this section literally, held that as the decree of the superior court in Washington between the parents of the child was granted to the husband for cruelty on the part of the wife, her consent to the adoption of her child was, under the section, unnecessary, ignoring entirely the fact that, notwithstanding the decree was in favor of the husband, the custody of the children was, by the very terms of the decree, awarded absolutely to her; not a limited but an absolute one as far as the custody is concerned.

Appellant here—the mother—contends that this is not the proper construction to be given to the section, and that if it is to be so construed it is, as far as it attempts to deprive her of the right to the custody of her children judicially awarded her by the decree of divorce without notice or her consent, unconstitutional, as depriving her of a vested right to her child without due process of law.

There is no necessity for considering this constitutional objection, because we do not think the section is subject to the literal construction which the superior court placed upon it. Such a superficial interpretation is not permissible when the spirit of our laws and the particular purpose of the enactment of the section respecting consent and the power of courts in divorce proceedings over the custody of the children of the marriage are considered.

In the latter proceeding the court has power and authority to make such orders as it may deem necessary and proper for the custody of the children of the marriage, without being constrained in any respect by the cause for which the divorce is granted, and may at any time vacate or modify such order. While section 224 provides generally that consent shall not be necessary to the adoption of children of the marriage from the parent against whom the decree is granted on the ground of cruelty, the section stops there. It does not assume to interfere with the orders of the court in divorce proceedings as to the custody of children, or, as said in *Miller* v. *Higgins,* 14 Cal. App. 161, [111 Pac. 405], speaking generally of this section 224: "This section does not undertake, nor is it intended, to modify the other sections of the code dealing specifically with the right of custody."

What is meant by this section, and what was intended by the legislature, it having in mind the natural rights of parents, as also the authority of courts in divorce proceedings to award the custody of children to either spouse, was that when a divorce is granted for cruelty (we are only concerned with this ground here) and the custody of the children is awarded absolutely to the innocent party, the consent of the guilty one will not be required in adoption proceedings. It contemplates that by decree of court in such proceedings the court has deprived the guilty spouse of all right to such custody and awarded it absolutely to the innocent party. That this is the proper interpretation of the section, we think reasonably appears from the language used in the section in this same connection as to consent and with reference to other proceedings than in divorce, where it is provided that when the parent has been ''judicially deprived'' of the custody of the children on account of cruelty or neglect, the consent of such parent is not necessary. The legislature, in providing a method for adoption, whereby the legal ties between the parent and the child should be absolutely severed, could not have intended to interfere with the authority of the court in other proceedings involving the custody of the child, or that the decree of a court in a divorce proceeding which awarded such custody to the guilty spouse should be entirely ignored.

There is nothing in the fact that a mother has been guilty of cruelty toward her husband which compels the court in awarding him a decree on that ground to also award the custody of the children to him. The weightiest and most natural considerations looking exclusively to the welfare of the children—their tender years, her conceded affection and love for them, the mental and moral and even material advantages which they will derive by being left with her, aside from probably the consent of the husband thereto—make it highly important that the court should so decree, and the legislature, recognizing this, could not have contemplated in the general language it used to allow interference with the decree of the court in the divorce proceeding respecting such custody or to have intended that a spouse so under control of the children under a decree of court, could, in another proceeding, be deprived of their custody without her consent.

As we have said, the whole proceeding for adoption is based on the consent of the parents thereto. Considering the natural relations to be severed and the new relations to be formally created, in the nature of things consent is necessary and essentially made so, except as the law dispenses with it, where a decree of divorce is granted on certain specified grounds and the innocent spouse is given absolutely the custody of the children—a judicial determination that he or she, on account of specific matrimonial misconduct should not have future control or custody of them—or where the children have been deserted or abandoned by their parents, and such unnatural conduct dispenses with such consent.

This is a proper, fair, and just interpretation of the section, and in the case at bar, as the mother was awarded the custody of the children by the decree of court, her consent was absolutely essential to the validity of any order for their adoption, unless, as further found by the court, the children had been deserted by her or abandoned, within the intent and meaning of section 224.

As to these latter findings. Abandonment is principally relied on, though desertion is also found. The only claim of desertion which is made or can be made under the evidence is that the child was permitted to remain in the custody of Mrs. Merriman from the time the court in the juvenile proceeding ordered it into her custody, which is the basis also for the claim of abandonment. Up to the time of this order in the juvenile proceeding, when the child was taken from its mother, there was no desertion or abandonment by either parent in any sense. The father was in possession of the child, supporting it, in Tacoma, until she was brought to her mother in San Jose, who was entitled to her possession under the decree of divorce, and who has never relinquished that right. After one of the quarrels between the mother and the child's stepfather over probably the retention of the children in the family (though the unsworn statement of the child at the hearing was that it was because her mother whipped her), she ran away to a family living in the neighborhood who were not on friendly terms with the mother, and who sent immediately for an officer. The child remained there about two weeks, so one of the family to whose house she went testified; while, on the other hand, it was testified that she only re-

mained there two days. Why she was permitted to remain away from her mother at all is not disclosed, but it was probably because of the refusal of the stepfather to keep the children in the family or support them, and the inability of the mother to then overcome his objections. However long Margaret may have remained away, her sister Mary called on the family harboring her and took her back to her mother, where she remained until her stepfather, against the pleading and objection of the mother, brought both the children to the juvenile court and they were taken from the custody of the mother by order of the court in the juvenile proceeding against Mary. It would be a waste of time to endeavor to point out that this was not desertion of the child by the mother. In fact, as we stated, desertion is not so much relied on as abandonment within the definition of the statute. This claim is based on the fact that the mother, after the order of the court originally placing the child in the custody of Mrs. Merriman, permitted her to remain there for over a year, without any agreement or provision for her support. That this was no abandonment within the terms of the section is so clearly shown under the evidence that it ought not to be open to discussion, although counsel for respondents contend strongly for it. Abandonment has a well-defined legal meaning. As said in *Guardianship of Snowball*, 156 Cal. 240, 243, [104 Pac. 444, 446] : "In order to constitute abandonment there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same." To constitute abandonment there must be an intention to do so, express or implied, from the conduct of the parent respecting the child. This is the character of abandonment contemplated by the very terms of section 224 as far as they are applicable or are relied on in this proceeding. It contemplates a case where a child has been voluntarily surrendered or left for a year in the care and custody of another without any agreement or provision for its support. This is not the situation here. The care and custody of this child was not so left by the mother with either Mrs. Merriman or the petitioners for adoption. It was taken away from her and placed in the custody of the former by order of the juvenile court (whether valid or not is immaterial to this inquiry) without the consent of the mother and against her wishes and desire. It was taken

from her under process of court—by force of law—invoked
or, at least, employed for the very purpose of depriving her
of the custody of the child, and such custody has been with-
held from her all along by virtue of the assumed authority
of the juvenile court to do so.   Since taken from her, she has
endeavored, through her personal efforts and those of her re-
lations, to secure the return of the child.   Under a represen-
tation and belief that she could not do anything toward
obtaining the restoration to her until the expiration of a year,
which the memorandum of the superior judge sitting in the
juvenile proceedings showed was the period for which he had
ordered her into the custody of Mrs. Merriman, she waited
until the expiration of that time, appeared and made her ap-
plication to the court in the juvenile proceedings for an order
to that effect, to be answered by an effort to deprive her
permanently of her child through adoption proceedings, under
the claim that she had abandoned her.   This evidence clearly
shows that there was no abandonment of the child by its
mother within the terms of the code provision, which amounts
simply to the general and accepted legal definition of aban-
donment, but, on the contrary the evidence clearly and af-
firmatively shows that there was no abandonment of the child
by the mother in any sense.   The findings of the superior
court, both as to desertion and abandonment, are not sustained
by the evidence.

It is insisted by appellant that the proceedings in the juve-
nile court respecting this child, and the order assigning its
custody to Mrs. Merriman, were void.   We are not called on
to pass on that question.   It is entirely immaterial as far
as the present proceeding is concerned.

Appellant asks for an order of this court directing the res-
toration of the child to its mother.   We have nothing to do
with the custody of the child in this proceeding.   If, as
claimed by appellant, the juvenile proceedings are void and
the child illegally detained thereunder from its mother, she
has a clear legal way to obtain possession of it under *habeas
corpus* proceedings.

The order appealed from is reversed.

Melvin, J., and Henshaw, J., concurred.

Hearing in Bank denied.