946 So.2d 867 (2006)
Evelyn HAYS
v.
Mavis HAYS.
2040482.
Court of Civil Appeals of Alabama.
June 23, 2006.
*868 John R. Campbell of Kettell & Campbell, L.L.P., Huntsville, for appellant.
Jerry Wayne Baker, Jr., Albertville, for appellee.
PER CURIAM.
Evelyn Hays ("the mother") appeals a judgment entered by the Marshall Probate Court that granted the petition of Mavis Hays ("the stepmother") to adopt Ashley Christine Hays ("the daughter"), the biological daughter of the mother. We reverse and remand.
The stepmother was married to the daughter's biological father, Steven Hays ("the father"), from 1987 until his death in April 2004. On June 15, 2004, the stepmother filed a petition to adopt the daughter, and the daughter filed a motion to consent to the adoption with the probate court. The daughter attained the age of majority on June 17, 2004. The probate court set September 2, 2004, as the hearing date for the adoption petition.[1] On July 14 and July 29, 2004, the mother filed objections with the probate court contesting the adoption. The daughter executed a written consent to the adoption on September 2, 2004, pursuant to § 26-10A-6, Ala.Code 1975.
The probate court entered a judgment on September 17, 2004, granting the stepmother's petition to adopt the daughter. The mother filed a postjudgment motion in which she argued, among other things, that the stepmother could not adopt the daughter pursuant to § 26-10A-6(2)c. because, she argued, the daughter was no longer "a stepchild by marriage" upon the death of the father. That motion was subsequently denied by operation of law. The mother timely appealed.
On appeal, the mother argues that the probate court erred in granting the stepmother's petition to adopt the daughter.
The Alabama Adoption Code ("the AAC"), codified at § 26-10A-1 et seq., Ala. Code 1975, establishes statutory criteria for adoption proceedings. On August 1, 2004, the legislature amended § 26-10A-6 of the AAC to extend the scope of adult adoptions.
Pursuant to § 26-10A-6(2)c., Ala.Code 1975, Alabama law now permits adult adoptions when an adult "consents in writing to be adopted and is related in any degree of kinship, as defined by the intestacy laws of Alabama, or is a stepchild by marriage."[2],[3] (Emphasis added.)
*869 "In Alabama, the right of adoption is purely statutory and in derogation of the common law, . . . and unless the statute by express provision or necessary implication confers the right of adoption, such right does not exist." Evans v. Rosser, 280 Ala. 163, 164-65, 190 So.2d 716, 717 (1966) (citing Doby v. Carroll, 274 Ala. 273, 147 So.2d 803 (1962)). Furthermore, "[w]e have always required strict adherence to the statutory requirements in adoption proceedings." McCoy v. McCoy, 549 So.2d 53, 57 (Ala.1989) (citing Ex parte Sullivan, 407 So.2d 559 (Ala.1981)).
We narrowly decide this case by examining the legal relationship of a stepparent and a stepchild and the plain-language definition of a "stepchild by marriage." In order to determine whether the daughter qualified as a "stepchild by marriage" pursuant to § 26-10A-6(2)c., we must first examine the familial relationship of a stepparent and a stepchild. The stepparent-stepchild relationship is one that is created through affinity. See Black's Law Dictionary 63 (8th ed.2004) (defining "affinity" as "[a]ny familial relation resulting from a marriage"). Additionally, affinity is extinguished upon the termination of the very means that created it, that is, the marriage of the natural parent and the stepparent. See Pomerantz v. Rosenberg, 593 S.W.2d 815, 817 (Tex.App.1980) ("This [affinity] relationship is also terminated upon the death of a spouse. . . ."); see also Orellana v. Escalante, 228 A.D.2d 63, 66, 653 N.Y.S.2d 992, 993 (N.Y.App.Div. 1997) ("By definition, however, a relation of affinity is based upon marriage (see, Black's Law Dictionary 59 [6th ed.1990]) and divorce destroys the foundation of that relation. Thus, the relation of affinity between stepparent and stepchildren terminates upon the divorce of the parent and stepparent. . . ."); Clifford S. v. Superior Court, 38 Cal.App.4th 747, 752, 45 Cal. Rptr.2d 333, 335-36 (1995) ("A person becomes a stepparent by marrying the natural biological parent and loses stepparent status should the marriage be terminated."); and 41 Am.Jur.2d Husband and Wife § 4 (2005) ("Affinity relationships arise out of marriage and are always terminated by divorce. The relationship is also terminated by the death of a spouse. . . . ").
Because a stepparent's affinity relationship with his or her stepchild is extinguished upon the death of the stepchild's natural parent, the legal relationship between the stepparent and the stepchild is also extinguished. See Newman v. Newman, 667 So.2d 1362, 1366 (Ala.Civ.App. 1994) (concluding that a stepfather's legal relationship to his stepchild was extinguished upon the death of his spouse, who was the natural custodial parent); see also Shoemaker v. Shoemaker, 563 So.2d 1032, 1034 (Ala.Civ.App.1990) ("the legal severance of the stepparent-natural parent relationship would also sever any legal relationship of the stepparent-stepchild for all practical purposes").
Furthermore, "`[i]t is an ingrained principle of statutory construction that "[t]he Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute. Ex parte Louisville & N.R.R., 398 So.2d 291, 296 (Ala. 1981)." Carson v. City of Prichard, 709 So.2d 1199, 1206 (Ala.1998).'" Holcomb v. *870 Carraway, 945 So.2d 1009, 1020 (Ala.2006). Because the legislature is presumed to possess knowledge of existing caselaw regarding the termination of the stepparent-stepchild relationship upon the death of the natural parent, see Newman and Shoemaker, supra, we will not impute a contrary legislative intent.
In addition, a plain-language analysis of the phrase "a stepchild by marriage" as stated in § 26-10A-6(2)c. produces a consistent result.
"`Words used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the Legislature must be given effect.'"
Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) (quoting Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991)). According to Merriam-Webster's Collegiate Dictionary 170 (11th ed.2003), "by" is defined as "through or through the medium of"; "during the course of"; and "through the agency or instrumentality of." Based on a plain-language interpretation, "a stepchild by marriage" connotes a relationship that is established through the marriage or during the course of the marriage. When the marriage is no longer in existence, the stepparent-stepchild relationship is likewise extinguished.
Therefore, based upon (1) the absence of an express provision providing otherwise, (2) the plain language of the statute, and (3) the aforementioned legal principles, we are constrained to hold that the daughter, at the time of the purported adoption, was not a "stepchild by marriage" of the stepmother pursuant to § 26-10A-6(2)c. Consequently, we reverse the judgment granting the stepmother's petition to adopt the daughter and remand the case for further proceedings consistent with this opinion. Because we reverse the judgment, we pretermit a discussion of the mother's remaining arguments in support of the reversal of the probate court's judgment granting the adoption petition.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK and BRYAN JJ., concur specially, with writings.
MURDOCK, Judge, concurring specially.
I concur with the main opinion, but I write separately to express what I believe to be more fundamental grounds on which the trial court erred to reversal.

I. Constitutional Concerns

First and foremost, Evelyn Hays ("the mother") argues that the purported adoption of her daughter without her consent violates her fundamental due-process rights under the Fourteenth Amendment of the United States Constitution.[4] I agree. The United States Supreme Court, as well as this court, has repeatedly recognized the fundamental right of the parent in the parent-child relationship. See generally, e.g., Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); Michael H. v. Gerald D., 491 U.S. 110, 123-24, 109 S.Ct. *871 2333, 105 L.Ed.2d 91 (1989); Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Stanley v. Illinois, 405 U.S. 645, 658-59, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Pierce v. Soc'y of Sisters, 268 U.S. 510, 534-35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 396-99, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Beck v. Beck, 865 So.2d 446, 451 (Ala.Civ. App.2003) (Murdock, J., concurring in the result); G.P. v. A.A.K., 841 So.2d 1252 (Ala.Civ.App.2002); L.B.S. v. L.M.S., 826 So.2d 178, 187-88 (Ala.Civ.App.2002) (Murdock, J., concurring in the judgment of reversal only); and R.S.C. v. J.B.C., 812 So.2d 361 (Ala.Civ.App.2001).[5]
Indeed, the right of a parent in the parent-child relationship is "perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] *872 Court." Troxel, 530 U.S. at 65, 120 S.Ct. 2054. The rights of both parents and children vis-à-vis the parent-child relationship are a function of the importance that western culture and our jurisprudence places on family. See, e.g., Trimble v. Gordon, 430 U.S. 762, 769, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (noting that the "family unit" is "perhaps the most fundamental social institution of our society"); and Lehr v. Robertson, 463 U.S. 248, 257 n. 13, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). Family relationships do not end merely because a child reaches the age of majority. It is true that a child naturally acquires certain rights upon attaining the age of majority. Consistent both with this fact and with the constitutional rights of a child's parents, I see no constitutional impediment to a state adding, as Alabama evidently has done, to the procedures for the adoption of a competent adult child a requirement that the adult child must consent to his or her adoption. The fundamental nature of the parent-child relationship and the importance of the family in our society, however, belie the notion that a child, merely by turning 19 years of age, can, without the consent of his or her parent, unilaterally sever the parent-child relationship.

II. Statutory Construction

Second, however, purely as a matter of statutory construction, I do not think the Alabama Adoption Code ("the AAC"), Ala. Code 1975, § 26-10A-1 et seq., may properly be interpreted to authorize children to unilaterally terminate their legal relationship with their parents upon reaching the age of majority.[6] A proper interpretation of the AAC, in my opinion, must begin with a comparison of the purposes of § 26-10A-6, Ala.Code 1975, and § 26-10A-7, Ala.Code 1975. Thereafter, a more direct examination of § 26-10A-11 and particularly § 26-10A-11(b), Ala.Code 1975, within the context of the other provisions of the AAC, is required.

A. Who May Be Adopted; Who Must Consent

Section 26-10A-6 is entitled "Who may be adopted" and serves the purpose of merely setting out a list of those categories of persons who are amenable to adoption under Alabama law. It by no means purports to set out all of the requirements that must be satisfied in order for a person falling within one of the stated categories to be lawfully adopted.
The five categories of persons who may be adopted under Alabama law, as stated in § 26-10A-6, are as follows:
(1) a minor, § 26-10A-6(1);
(2) an adult who is totally and permanently disabled, § 26-10A-6(2) a.;
(3) an adult who is determined to be mentally retarded, § 26-10A-6(2)b.;
(4) an adult who consents in writing to be adopted and is related in any degree of kinship, as defined by the intestacy laws of Alabama, to the adopting party, or is a stepchild of the adopting party by marriage, § 26-10A-6(2)c.; and
(5) an adult who consents in writing to be adopted by an adult man and woman who are husband and wife, § 26-10A-6(2)d.
It is not § 26-10A-6, but § 26-10A-7 and subsequent sections of the AAC, that prescribe the various requirements that must be satisfied in order for there to be a lawful adoption of a person who falls into *873 one of the categories described in § 26-10A-6.
Among the requirements stated in § 26-10A-7 is that, if the prospective adoptee is 14 years of age or older, he or she must consent to the adoption. § 26-10A-7(a)(1). Moreover, § 26-10A-7(a)(2) and (a)(3) clearly require, without any restriction of this requirement to prospective adoptees of any particular age, that the prospective adoptee's mother and, under certain circumstances, the presumed father, give their consents to the adoption. These requirements are in accord with the constitutional protection of the parent-child relationship discussed in section I above.
In this case, the mother has not given her consent to the adoption of her daughter by another woman. Yet, it is the consent requirement of § 26-10A-7 that prevents one adult in Alabama from adopting the child of another adult without the latter adult's, i.e., the natural parent's, consent. There is nothing in the structure or wording of § 26-10A-7 that prescribes any different application of its consent requirements based on which of the various categories of prospective adoptees listed in § 26-10A-6 is at issue. If we may ignore the consent requirements of § 26-10A-7(a) as to a prospective adoptee who falls within the category described in § 26-10A-6(2)c., then nothing would prevent us from ignoring the consent requirements of § 26-10A-7(a) as to a prospective adoptee who falls within one of the other categories described in § 26-10A-6, including the category described in § 26-10A-6(1), i.e., an adoptee who is simply "a minor."[7]
In analyzing these provisions of the AAC, several fundamental rules of statutory construction should be noted: (1) "[a]ll statutes relating to the same subject or having the same general purpose [must] be read together to constitute one law," Florence v. Williams, 439 So.2d 83, 87 (Ala. 1983); (2) a court construing a statute must look not only to the language of the statute, but also to the "purpose and object of the enactment, and its relation to other laws and conditions which may arise under its provisions," Siegelman v. Folmar, 432 So.2d 1246, 1249 (Ala.1983); and (3) in construing a statute, a court's duty is to "ascertain and effectuate the legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained," Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238, 248 (Ala. 1992). Although all of these principles support my reading of the statutes as discussed above, it is really only necessary to take note of the most basic principle stated in the foregoing three rules, namely, that the meaning of a statute should be "gleaned from the language used" when that it possible. As our Supreme Court stated in *874 IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344, 346 (Ala. 1992): "Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says." The plain meaning of the language used in § 26-10A-6 is merely to describe the categories of children, whether they be minors or adults, who are amenable to adoption under Alabama law provided that all the necessary conditions to a valid adoption are met. The plain meaning of the language used in § 26-10A-7 is that the consent of a child's natural parent must be given in order for that child to be adopted. Section 26-10A-7 does not distinguish between minor and adult children in imposing this consent requirement.

B. The 1998 and 2004 Amendments to the AAC

I turn now to a more specific discussion of changes made to the AAC by the Alabama Legislature in 1998 and 2004. In 2004, the legislature amended the AAC to provide for the adoption of consenting adults by persons to whom the adoptee "is related in any degree of kinship," by a stepparent, and by "an adult man and woman who are husband and wife." Ala. Code 1975, §§ 26-10A-6(2)c. and 26-10A-6(2)d.; see also Act No. 2004-528, Ala. Acts 2004. The addition of these categories of potential adoptees is the only change to the AAC made by Act No. 2004-528. That act did not purport to change the substance of the amendments made by the legislature in 1998 to the AAC. In particular, Act No. 2004-528 did not purport to alter the meaning of § 26-10A-11(b). To understand the intended meaning and application of § 26-10A-11(b), its historical context should be considered.
Adoption laws, including the AAC, are in derogation of common law, are in derogation of the rights of natural parents, and therefore are to be strictly construed. K.L.B. v. W.M.F., 864 So.2d 333 (Ala.Civ. App.2002) (plurality opinion). See also S.C.W. v. C.B., 826 So.2d 825, 832 (Ala.Civ. App.2001) ("It is well settled that, because adoption is purely statutory, strict compliance with the statutes is required."); and Neal v. Neal, 856 So.2d 766, 782 (Ala.2002) (quoting Doby v. Carroll, 274 Ala. 273, 274, 147 So.2d 803, 804 (1962)) ("`In Alabama the right of adoption is purely statutory and in derogation of the common law, . . . and unless the statute by express provision or necessary implication confers the right to adoption, such right does not exist.'").
As to no other aspect of the AAC is respect for the foregoing principle more critical than to the requirement of parental consent:
"`The adoption of a child was a proceeding unknown to the common law. The transfer of the natural right of the parents to their children was against its policy and repugnant to its principles. It had its origin in the civil law and exists . . . only by virtue of the statute which . . . expressly prescribes the conditions under which adoption may be legally effected.
"`Consent lies at the foundation of statutes of adoption, and under our law this consent is made absolutely essential to confer jurisdiction on the . . . court to make an order of adoption, unless the conditions . . . exist specially provided by the statute itself and which render such consent of the parents unnecessary. Unless such consent is given, or, for the exceptional causes expressly enumerated is dispensed with, the court has no jurisdiction in the matter. . . . The power of the court in adoption proceedings to deprive a parent of his child being in derogation of his natural right to it, and being a special power conferred by the *875 statute, such statute must be strictly construed, and in order to warrant the exercise of the special power . . . in opposition to the wishes and against the consent of the natural parent, on the ground that conditions prescribed by statute exist which make that consent unnecessary, the existence of such conditions must be clearly proven . . . [and] if the statute is open to construction and interpretation, it should be construed in support of the right of the natural parent.'"
McGowen v. Smith, 264 Ala. 303, 305, 87 So.2d 429, 430-31 (1956) (quoting In re Cozza, 163 Cal. 514, 522-24, 126 P. 161, 164 (1912)).
Before the 1998 amendments to the AAC, see Act No. 98-101, Ala. Acts 1998, the AAC provided only for one category of persons who lawfully could be adopted: minors. See Act No. 90-554, § 6, Ala. Acts 1990 ("Any minor may be adopted.") (see predecessor to current § 26-10A-6). In 1998, the Alabama Legislature passed Act No. 98-101, amending the AAC and extending the right to be adopted to two additional categories of persons: adults who are "totally and permanently disabled," Ala.Code 1975, § 26-10A-6(2)a., and adults who are "determined to be mentally retarded," Ala.Code 1975, § 26-10A-6(2)b.
As suggested by the additions made by Act No. 98-101 to § 26-10A-6, the reason for the passage of Act No. 98-101 was to address the issue of whether and under what conditions disabled and mentally retarded adults would be adoptable in Alabama. That this was the whole purpose of the act is evidenced by the manner in which the title of the act describes the act, namely, as "[a]n Act . . . [t]o amend Sections 26-10A-4, 26-10A-5, 26-10A-6, 26-10A-7, 26-10A-11, and 26-10A-12, Code of Alabama 1975; to provide for the adoption of an adult who is disabled or mentally retarded." In fulfilling this purpose, Act No. 98-101 amended various sections of the AAC to prescribe conditions that must be met to allow for the adoption of a disabled or mentally retarded adult. This included the amendments made by the act to § 26-10A-7, Ala.Code 1975, including particularly the addition of subsection (b) to that section, and the amendment to 26-10A-11, including particularly the addition of subsection (b) to that section.
Before 1998, § 26-10A-7, entitled "Persons whose consents or relinquishment are required," stated, in part:
"(a) Consent to the petitioner(s)' adoption . . . shall be required of the following:
"(1) The adoptee, if 14 years of age or older, except where the court finds that the adoptee does not have the mental capacity to give consent;
"(2) The adoptee's mother;
"(3) The adoptee's presumed father, regardless of paternity, [under certain prescribed conditions]:
". . . .
"(4) The agency to which the adoptee has been relinquished or which holds permanent custody and which has placed the adoptee for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interests of the adoptee and there is a finding that the agency has unreasonably withheld its consent; and

"(5) The putative father if made known by the mother or is otherwise made known to the court provided he responds within 30 days to the notice he receives under Section 26-10A-17(a)(10)."
(Emphasis added.) See also Act. No. 90-554, § 7, Ala. Acts 1990.
*876 Consistent with the fact that the purpose of Act No. 98-101 was to address the adoption of disabled and mentally retarded adults, the act added a new subsection to a section in which the legislature had previously prescribed the categories of persons or entities who must give their consent to an adoption. This new subsection, designated by the act itself to be § 26-10A-7(b), states:
"(b) A petition to adopt an adult may be granted only if written consent to adopt has been executed by the adult seeking to adopt and his or her spouse or by the guardian or conservator of the adult sought to be adopted pursuant to the requirements of Sections 26-10A-6 and 26-10A-11."
Section 26-10A-7(b) is additive in its effect. Conspicuously absent from it is any language to the effect that it was intended to displace the consent requirements of § 26-10A-7(a). Specifically, the statute requires the consent of (1) the adopting party, and his or her spouse, or, (2) in the event the adult adoptee is incompetent, presumably due to his disability or retardation, a guardian or conservator. (Subsection (b) requires the consent of "the guardian or conservator of the adult sought to be adopted pursuant to the requirements of § 26-10A-6 and 26-10A-11." The latter section specifically requires the consent of a guardian or conservator for an incompetent adult adoptee.)
Unlike §§ 26-10A-6 and 26-10A-7, at the time of the enactment of Act No. 98-101, § 26-10A-11 clearly was limited in its focus to procedural requirements, namely, a description of the content of a valid consent (including such matters as the date, place, and time of execution; dates of birth; prior relationships, if any, of the parties involved; and other acknowledgments required to be included in the consent). Section 26-10A-11 was limited to this purpose and contained no language suggesting any encroachment into the purpose of § 26-10A-7, i.e., prescribing who must give consent to an adoption.
Again, it was in the course of providing for the adoption of disabled and mentally retarded adults in Act No. 98-101 that the legislature added subsection (b) to § 26-10A-11. Although the first sentence of § 26-10A-11(b), read in isolation, could be construed as supportive of the trial court's judgment granting the adoption, I submit that the actual meaning of the first sentence of § 26-10A-11(b) can only be discerned when it is read in the context of the sentences that immediately follow it in § 26-10A-11(b), and when all of these sentences are in turn read in the context of the very purpose of Act No. 98-101.
Section 26-10A-11(b) states:
"When the person sought to be adopted is an adult, only the sworn, written consent of the adult person sought to be adopted shall be required and no order of reference or any home studies need be issued. If the adult person to be adopted has been adjudicated incompetent, the written consent of the adult person's guardian or conservator shall be required. If the adult person is without a spouse, guardian, or conservator and the court has reason to believe that the adult person is incompetent to give consent, the court shall appoint a guardian ad litem who shall investigate the adult person's circumstances and that guardian ad litem shall give or withhold consent. The guardian ad litem shall file a written report stating the basis for the decision and the court shall afford a hearing to all parties to present evidence as to the best interest of the adult person, and if the court determines upon clear and convincing evidence that the decision to withhold consent by the guardian ad litem is arbitrary and is not *877 in the best interests of the incompetent adult person, it may proceed to make any other orders it deems necessary for the adult person's welfare, including granting the petition for adoption."
(Emphasis added.)
This court must consider statutory provisions in the context of the entire statutory scheme, rather than in isolation. Siegelman v. Alabama Ass'n of School Bds., 819 So.2d 568, 582 (Ala.2001). In ascertaining legislative intent, we must look to the entire act instead of isolated phrases or clauses. Lambert v. Wilcox County Comm'n, 623 So.2d 727, 729 (Ala.1993). Moreover, it is "the duty of the Court to harmonize and reconcile all parts of a statute so that effect may be given to each and every part: conflicting intentions in the same statute are never to be supposed or so regarded unless forced on the Court by unambiguous language." Leath v. Wilson, 238 Ala. 577, 579, 192 So. 417, 419 (1939). When construing the language of a statute, this court must presume "`"that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."'" Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997)). These principles of statutory construction, especially when coupled with the principle of strict construction of adoption statutes because they are in derogation of the rights of natural parents, requires that we not read the first sentence of subsection (b) of § 26-10A-11 in isolation from the remaining provisions of that subsection, from the purpose of Act No. 98-101, and from the other provisions of the AAC.
A view that § 26-10A-11(b) renders all consents, except that of the prospective adoptee, superfluous creates an unnecessary conflict between the express terms of that section and § 26-10A-7(a) and (b). First, if, when the legislature enacted Act No. 98-101 in 1998, it intended that § 26-10A-11(b) narrow to only the adoptee himself or herself the list of persons whose consent is required for his or her adoption if he or she is an adult, it directly conflicts with the express, unqualified provisions of § 26-10A-7(a), which the act could have, but did not, directly amend. Further, if, in enacting Act No. 98-101, the legislature intended with its addition of subsection (b) to § 26-10A-11 to displace the otherwise clear and unmodified consent requirements of § 26-10A-7(a), it did so in a way that also contradicts another provision of Act No. 98-101, itself, namely, the provision adding subsection (b) to § 26-10A-7. (Again, that subsection specifically requires for the adoption of an adult, assuming it is a competent adult not in need of the consent of a guardian or conservator as provided in the latter half of that subsection, the written consent of the adult seeking to adopt, as well as his or her spouse, executed in the form outlined in § 26-10A-11(a).)
Thus, an understanding of § 26-10A-11(b) as supplying the only set of consent requirements applicable to adult adoptees would necessarily lead to the conclusion that, in adopting Act No. 98-101, the legislature (1) intended to insert a provision in § 26-10A-11 governing who must give a consent to the adoption of an adult, even though before that insertion § 26-10A-11 had no provisions addressing who was required to execute a consent to adoption (nor was it a section devoted to the issue of adult adoptions) but, instead, before 1998, was merely procedural in its focus, stating the content and execution requirements for written consents; (2) intended to enact § 26-10A-11(b) to displace the consent requirements otherwise applicable to adult *878 adoptions in § 26-10A-7(a), and intended to do this in the same act in which it specifically added a subsection (b) to § 26-10A-7 to address the issue of who must consent to an adult adoption; and (3) amended § 26-10A-11 in a way that conflicts with the provisions of § 26-10A-7 (a) and, indeed, with the requirement in § 26-10A-7(b) that the adopting adult and his or her spouse must give written consents.

III. Conclusion

What is, in my opinion, a more straightforward and reasonable understanding of the various provisions of Act No. 98-101 and the manner in which it amended the AAC, and an approach that is in fact consistent with the above-discussed principles of statutory construction, is as follows: As would be expected by the insertion of subsection (b) in § 26-10A-7, and the fact that it was added to § 26-10A-7 by an act concerned with prescribing the conditions under which disabled and mentally retarded adults could be adopted, § 26-10A-7(b) was simply enacted as a provision to prescribe additional consent requirements (without amending or altering the existing consent requirements found in § 26-10A-7(a)), when the adoptee is a disabled or mentally retarded adult. Certainly, based on a plain reading of § 26-10A-7(b), there simply is nothing to suggest that its provisions were intended to displace the requirements of § 26-10A-7(a). Indeed, the language used in § 26-10A-7(b) does not in any way purport to be exclusive, i.e., it does not state that only the consents described in that subsection are necessary. Section 26-10A-7(b) says merely that the consents described therein are prerequisites to the approval of a petition to adopt an adult, and it contains no language purporting to qualify the requirements otherwise stated in § 26-10A-7(a). The additional consents now required in § 26-10A-7(b) include the consent of both the petitioner and, for the first time, his or her spouse, which evidently applies if the adoptee is competent to give his or her own consent. In the alternative, if the adult adoptee is incompetent, the second clause of § 26-10A-7(b) requires the consent of the adoptee's guardian or conservator, specifically stating that a guardian or conservator of the adult sought to be adopted must be given "pursuant to the requirements of Sections 26-10A-6 and 26-10A-11."
The foregoing interpretation of § 26-10A-7 is supported by the Comment to that section. The Comment states that § 26-10A-7 specifies those persons from whom consent "is required." The Comment goes further and describes the right to consent as a substantive right, rather than as a procedural right. The Comment further states that "[i]n effect, the persons listed in section 26-10A-7 have an absolute veto power over the proposed adoption." This Comment was not changed with the 1998 amendments to the AAC.
Reading § 26-10A-7(b) as supplying the additional consent requirements intended by the legislature to be applicable when a disabled or mentally retarded adult is to be adopted provides then the context for assessing the import of the addition in Act No. 98-101 of subsection (b) to § 26-10A-11. Read in pari materia with this understanding of § 26-10A-7 (b), § 26-10A-11 (b) is more easily and rationally understood not as disruptive of what would otherwise be a complete and internally consistent list in § 26-10A-7(a) and (b) of who must consent to an adoption, but rather as a complement to the procedural requirements that are otherwise described in § 26-10A-11 and the "pre-placement investigation" requirements contained in *879 § 26-10A-19, Ala.Code 1975.[8]
All but the first sentence of subsection (b) of § 26-10A-11 is concerned with the procedure for obtaining a written consent from someone with a fiduciary relationship to an incompetent adult adoptee, i.e., a guardian, a conservator, or a guardian ad litem. If the first sentence of subsection (b) is read in light of the remaining provisions of that subsection, and in a manner that avoids the above-discussed conflict with § 26-10A-7(b) (requiring consents by the adopting adult and his or her spouse), it is more reasonably and easily read as simply explaining that, unlike incompetent adult adoptees as discussed in the remainder of that subsection, a competent adult adoptee can, without help from anyone else and without an "order of reference or . . . home studies"[9] specifically referenced in the first sentence, provide the necessary assurance to the state that the proposed adoption is in his or her "best interest." In other words, the statute may simply be read as stating that "only the sworn, written consent of the adult [adoptee]" is necessary to satisfy the state's legitimate concern as to whether an adoption will be in the adoptee's "best interest." The remainder of § 26-10A-11(b) then proceeds to prescribe safeguards deemed necessary to ensure that, in the case of an adoption of an incompetent adult, a responsible entity other than the adoptee himself of herself has determined that the adoption is in his or her best interest.
So read, the provisions of § 26-10A-11(b) complement, and are appropriately read in pari materia with, the requirement of the AAC that, in addition to the various consents that are required and that are fully described in § 26-10A-7, there must be a determination in every case, whether involving a minor adoptee or an adult adoptee, that the adoption is in the adoptee's best interest. See Ala.Code 1975, §§ 26-10A24(a)(1) and 26-10A-24(b)(6).
For the foregoing reasons, I conclude that the trial court's judgment is due to be reversed.
BRYAN, Judge, concurring specially.
I write specially to note that I agree with the majority opinion based on the principles stated therein. Because adoption is in derogation of the common law, we must exercise absolute judicial restraint and follow the strict construction of the statute as adopted by the legislature. See Evans v. Rosser, 280 Ala. 163, 164-65, 190 So.2d 716, 717 (1966).
If, by some chance, the majority opinion and the special writings have not correctly construed the intent of the legislature, the legislature can amend the statute to clearly and concisely state its intent regarding the adoption of a child who has attained the age of majority and consents to an adoption by another adult.
Although I am certainly sympathetic to the stepmother and the daughter's situation in that the stepmother is unable to adopt the daughter who has attained the age of majority, most assuredly no court order or the lack of a formalized judgment of adoption can deter the nonlegal relationship of love and affection between the daughter and the stepmother. Moreover, *880 the daughter and the stepmother may accomplish many of the results they may be attempting to achieve through adoption by other legal avenues, such as utilizing wills, living wills, powers of attorney, trust agreements, and various other legal mechanisms.
NOTES
[1] The record does not indicate whether the hearing was actually held.
[2] The daughter executed a written consent to the adoption on September 2, 2004, which was after § 26-10A-6(2)c. became effective on August 1, 2004.
[3] Judge Murdock, in his special concurrence, maintains that the AAC allows for the adoption of adults only upon the written consent of the prospective adoptee's natural parents. Nevertheless, whether the Alabama Legislature intended such a strict construction of the AAC remains to be determined at a later date or is a matter for the legislature to clarify.
[4] The mother also argues that the purported adoption of her daughter violates her due-process rights under Art. 1, § 13 of the 1901 Constitution of the State of Alabama.
[5] There is a split among the federal Circuit Courts of Appeals as to whether a parent's relationship with his or her adult child is afforded federal constitutional due-process protection to the extent that the parent can make a claim asserting loss of companionship of the child under 42 U.S.C. § 1983. The Court of Appeals for the Seventh Circuit and the Ninth Circuit answer the inquiry in the affirmative. See, e.g., Bell v. City of Milwaukee, 746 F.2d 1205, 1245 (7th Cir.1984) (holding that the parent's "`interest in the companionship, care, custody, and management'" of the child did not disappear once the child reached adulthood); and Strandberg v. Helena, 791 F.2d 744 (9th Cir.1986) (recognizing the parent-child relationship as being so fundamental that the state cannot arbitrarily interfere with it, even when the child is an adult). Under the Ninth Circuit Court of Appeals' decision, it is the virtue of a familial relationship that gives rise to the substantive due-process violation. Strandberg, 791 F.2d at 748 and note 1.

The Courts of Appeals for the First, Third, Eleventh, and District of Columbia Circuits have reached a contrary conclusion but, again, in the context of a claim asserting loss of companionship. As the Eleventh Circuit Court of Appeals explained in Robertson v. Hecksel, 420 F.3d 1254 (11th Cir.2005):
"The Third Circuit's ultimate conclusion in McCurdy [v. Dodd, 352 F.3d 820 (3d Cir. 2003),] that `the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child,' McCurdy, 352 F.3d at 830, appears to indicate no right exists. But the McCurdy Court also discussed the incidental nature of the injury: `It would, therefore, stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship.' Id.; see also Russ [v. Watts], 414 F.3d [783,] 789 [(7th Cir.2005)] (`Under any standard, finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court.') (citations omitted)."
420 F.3d at 1259 (emphasis added). See also Robertson v. Hecksel, 420 F.3d at 1258-59 (explaining the First Circuit Court of Appeals' decision in Valdivieso Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir.1986)).
Likewise, the Robertson v. Hecksel Court recognized that the position taken by the District of Columbia Circuit Court of Appeals is directed at not allowing recovery for "companionship" interests, not at disavowing any constitutional protection for the parent-child relationship itself:
"In Butera [v. District of Columbia, 235 F.3d 637 (D.C.Cir.2001)], the District of Columbia Circuit specifically noted that it had no reason to consider how the injury occurred:
"`Because we hold that a parent-child relationship between two independent adults does not invoke constitutional "companionship" interests, we do not reach the District of Columbia's contention that Terry Butera's claim fails because the District of Columbia's actions were not intentionally directed or aimed at her relationship with her son.'
"Butera, 235 F.3d at 656 n. 23 (citation omitted)."
Robertson v. Hecksel, 420 F.3d at 1259 (emphasis added).
[6] Of course, in addition to the analysis of the statutory text that composes the balance of this opinion, the need to avoid an interpretation that would make a portion of the AAC unconstitutional, itself, augers against such an interpretation. See discussion, supra, and note 8, infra.
[7] Of course, when a natural parent's rights vis-à-vis a child have been terminated due to the parent's abandonment of the child or the parent's unfitness, § 26-10A-7 does not operate to require that person's consent because that person is no longer the legal parent of the prospective adoptee. In the present case, the adoption has purportedly occurred without either the consent of the child's natural parent or the termination of her parental rights. It is true that a court in the State of Florida, in a domestic-relations judgment, ordered that the mother not have contact with the child. There is a difference between permanently and irrevocably severing a parent-child relationship, on the one hand, and entering a modifiable order preventing a parent from having contact with a child during the period of the child's minority, on the other hand. Cf. V.M. v. State Dep't of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998) (quoting East v. Meadows, 529 So.2d 1010, 1012 (Ala.Civ.App.1988)) (noting that the termination of parental rights is a "drastic measure" and "`the last and most extreme disposition'" permitted by law).
[8] In addition, a statute should be construed, when possible, in a manner that avoids rendering the statute unconstitutional. Ex parte Huguley Water Sys., 282 Ala. 633, 639, 213 So.2d 799, 805 (1968). The interpretation of § 26-10A-7 and § 26-10A-11 in the text avoids the constitutional concerns expressed near the outset of this opinion.
[9] This precise language appears nowhere else in the AAC, but it appears to be referring to the pre-placement investigation otherwise required by § 26-10A-19.